A91A1548. MOON et al. v. HOMEOWNERS' ASSOCIATION OF
SIBLEY FOREST, INC. et al.
A91A1549. MOON et al. v. SWIMATLANTA POOL
MANAGEMENT, INC.
(415 SE2d 654)

Carley, Presiding Judge.

In his capacity as president of Racetrac, Inc. (Racetrac), appellee-defendant Max Lenker undertook to host a party for a new Racetrac employee. Appellee Lenker was a member of appellee-defendant Homeowners' Association of Sibley Forest, Inc. (Association) and, for a fee, Racetrac rented the Association's clubhouse and pool facility as the site for the party. The Association had contracted with appellee-defendant Swimatlanta Pool Management, Inc. (Swimatlanta) to provide lifeguard services at its pool and, pursuant to that contract, Swimatlanta was providing lifeguard services at the party. As a Racetrac employee, appellant-plaintiff Charles Moon was invited to the party and he attended. At the party, Moon was seriously injured when he either dove or was thrown into the shallow end of the pool. Seeking to recover damages on account of his injuries, Moon and his wife filed suit against the appellees. After answering and engaging in discovery, Lenker, the Association and Swimatlanta moved for summary judgment. The trial court granted the motions and two separate notices of appeal were filed. The two appeals are hereby consolidated for disposition in this single opinion.

1. If the evidence of record is construed most favorably for Lenker, the Association and Swimatlanta, then Moon voluntarily dove into the shallow end of the pool. However, the evidence of record must be construed most strongly against them and most favorably for the Moons. When this is done, a jury would be authorized to find that Moon was involuntarily pulled to the edge of the pool by two other guests and only after he was then forcibly thrown forward did he instinctively raise his arms in a diving motion.

" 'The defense of assumption of risk presupposes (1) that the

plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk therefrom[;] and (3) that he voluntarily exposed himself to such risk.' [Cit.]" *Abee v. Stone Mtn. Memorial Assn.*, 169 Ga. App. 167, 169 (1) (312 SE2d 142) (1983), aff'd 252 Ga. 465 (314 SE2d 444) (1984). Obviously, if Moon "dove" only *after* he was involuntarily thrust toward the edge of the pool and into the shallow end, he did *not* voluntarily assume the risk of so doing. His "dive" would have been precipitated by the unauthorized actions of those who threw him into the pool, not by his own voluntary decision to risk the perceived danger of entering the shallow end of the pool headfirst. Compare *Plantation at Lenox &c. Assn. v. Lee*, 196 Ga. App. 420, 421 (2) (395 SE2d 817) (1990); *Bunch v. Stanton*, 174 Ga. App. 233, 234 (1) (329 SE2d 538) (1985) (voluntary dive which was immediately preceded only by verbal threats rather than reflexive "dive" which was precipitated by physical act of another). Accordingly, a genuine issue of material fact remains as to whether Moon assumed the risk of diving into the shallow end of the pool and the grant of summary judgment would not be authorized on the basis of that defense.

2. As noted, the Association's clubhouse and swimming pool facility had been rented for a fee by Racetrac as the site for the party to be hosted by Lenker. Accordingly, Racetrac and Lenker were, as to the Association, tenants, and Moon, as a guest of Racetrac's and Lenker's was, as to the Association, an invitee. *Plantation at Lenox &c. Assn. v. Lee*, supra at 421 (1). However, Moon was, as to Racetrac and Lenker, a social guest and a licensee because ". . . Georgia has adopted the rule that a social guest is not an invitee but is a licensee. [Cits.]" *Barry v. Cantrell*, 150 Ga. App. 439, 440 (1) (258 SE2d 61) (1979).

"[W]here the alleged injury is caused by [an] *alleged dangerous statical condition* [on] the [premises], no duty arises, with reference to . . . the licensee, 'of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, mantraps, and things of that character.' [Cits.]" (Emphasis supplied.) *Leach v. Inman*, 63 Ga. App. 790, 792 (12 SE2d 103) (1940). However, Moon's injury was not allegedly caused by any dangerous static condition of the land itself, but by the dangerous act of other guests to which he was subjected while attending a party being held thereon. It is not the swimming pool that Moon alleges to be the cause of his injury, but the act whereby he was involuntarily thrown into the shallow end of that swimming pool. "The fundamental concept of this class of cases . . . is of a liability only for wilful and wanton injury, but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of *a dangerous act*

*being done . . .* on one's premises." (Emphasis supplied.) *Cook v. Southern R. Co.*, 53 Ga. App. 723, 726 (3) (187 SE 274) (1936). "As to a licensee whose presence is discovered and after his position of peril is known, or should have been known, it may be wilful or wanton to fail to exercise ordinary care to prevent injuring him." *Murray Biscuit Co. v. Hutto*, 115 Ga. App. 870, 872 (2) (156 SE2d 132) (1967). "After the presence of the licensee is known, *exactly the same acts of caution* may be required of the owner to satisfy the legal duty as would be necessary if the licensee were invited. [Cits.]" (Emphasis supplied.) *Cook v. Southern R. Co.*, supra at 727 (3).

Construing the evidence most strongly against Lenker, he not only had actual knowledge that some of his guests were engaging in the potentially dangerous activity of throwing other unwilling guests into the pool, he had actually instigated that very activity by his initial suggestion that the guest of honor be thrown into the pool. Likewise, there is evidence that Lenker had actual knowledge that Moon was an intended target of this potentially dangerous activity, but did nothing to prevent or dissuade his boisterous guests from throwing the unwilling Moon into the shallow end of the pool. Thus, a jury would be authorized to find that Lenker, after discovering that Moon was in a position of peril as the result of the potentially dangerous act of some of the other guests, wantonly and wilfully failed to exercise ordinary care to prevent Moon's injury at the hands of those other guests and that Lenker was, therefore, liable for the injury notwithstanding Moon's status as a licensee. Since "the presence of [Moon was] known, exactly the same acts of caution may be required of [Lenker] to satisfy the legal duty as would be necessary if [Moon] were [an invitee]. [Cits.]" *Cook v. Southern R. Co.*, supra at 727 (3). " 'An owner of premises is liable to a guest . . . when the owner has reason to anticipate the misconduct of the guest inflicting the injury.' . . . [Cit.]" *Veterans Org. of Fort Oglethorpe v. Potter*, 111 Ga. App. 201, 206 (2) (141 SE2d 230) (1965). "[A] jury could reasonably find that [Lenker] was guilty of negligence if he could expect or anticipate violent conduct on the part of one guest toward another guest." *Georgia Bowling Enterprises v. Robbins*, 103 Ga. App. 286, 288 (119 SE2d 52) (1961).

However, in *Bunch v. Stanton*, supra at 235 (1), we held: "While it would be reasonable to infer that [the defendant] was aware that [guests] were being thrown into the pool before [the plaintiff] was forced in, and to further infer that he knew this was a dangerous activity with respect to the safety of persons, the licensee [plaintiff] knew also. . . . And the law does not impose on the occupier, with respect to a licensee in these circumstances, a duty to prevent or control or stop the dangerous activity, because he is liable only for his wantonly and wilfully caused injury. [The defendant's] failure to su-

pervise the pool activity would not constitute a breach of duty towards the licensee [plaintiff], given the undisputed facts of this case." Insofar as this holding suggests that there is no duty to undertake to protect a social guest from an injury caused by the *reasonably anticipated misconduct* of another social guest, it is inconsistent with the longstanding applicable principles of Georgia law. Since a failure to exercise ordinary care *is* wanton and wilful as to those licensees whose presence is *known,* an alleged negligent failure to protect such a licensee from the reasonably anticipated misconduct of another *is* actionable. Whether or not that duty was breached and whether or not the injured licensee exercised reasonable care for his own safety will, of course, vary with the circumstances. However, to the extent that *Bunch v. Stanton,* supra, stands for the proposition that the breach of that duty is not actionable under any circumstances, it is erroneous and must be overruled. Accordingly, *Bunch v. Stanton* is not viable authority for the grant of summary judgment in favor of Lenker.

3. Assuming, without deciding, that Lenker, who is being sued for the breach of a duty owed in his individual rather than his corporate capacity, can be considered an alter ego of Racetrac, the exclusive remedy provision of the Workers' Compensation Act would not authorize the grant of summary judgment in his favor. *Pizza Hut of America v. Hood,* 198 Ga. App. 112 (1) (400 SE2d 657) (1990).

4. As noted, Moon was, as to the Association, an invitee. *Plantation at Lenox &c. Assn. v. Lee,* supra at 421 (1). Accordingly, the Association owed Moon a duty of ordinary care to keep the premises safe. OCGA § 51-3-1. Since this was a non-delegable duty, the mere fact that lifeguard services were being provided by Swimatlanta would not insulate the Association from potential liability. " 'A business invitor owes a *nondelegable duty* to protect (his) invitees from injury. . . [.]' [Cit.]" *Towles v. Cox,* 181 Ga. App. 194, 196 (1) (351 SE2d 718) (1986). Accordingly, the Association may be liable if Swimatlanta was negligent in failing to protect Moon from injury.

There is evidence that the lifeguard provided by Swimatlanta was inexperienced and may have been negligent in failing to control the boisterous activity around the pool. Accordingly, a genuine issue of material fact remains as to Swimatlanta's and the Association's liability for an injury that Moon may have suffered as the proximate result of that uncontrolled boisterous activity. " 'If the conduct of third persons . . . is such as to cause any reasonable apprehension of danger to other customers or invitees because of such conduct, it is the duty of the proprietor to interfere to prevent probable injury; and a failure so to interfere, and consequent damage, will subject such proprietor to an action for damages for such negligent failure to prevent the injury. This duty of interference on the proprietor's part does not begin until the danger is apparent, *or the circumstances are*

*such as would put an ordinarily prudent man on notice of the probability of danger.* (Cit.)' [Cit.]" (Emphasis in original.) *Towles v. Cox,* supra at 197 (1).

*Judgments reversed. McMurray, P. J., Birdsong, P. J., Pope, Cooper, JJ., and Judge Arnold Shulman concur. Sognier, C. J., Beasley and Andrews, JJ., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I concur in Divisions 1 and 4 and in the judgment reversing the summary judgments to the three defendants.

As to Division 3, I agree that Lenker is not entitled to summary judgment on the theory that the Workers' Compensation Act provides the exclusive remedy. There are at least questions of fact regarding whether "employee [Moon's] participation [was] required either expressly or by implication," and whether "the employer derive[d] a substantial benefit from the event beyond the improvement in employee health and morale that is common to all kinds of recreational or social activities." *Pizza Hut of America v. Hood,* 198 Ga. App. 112 (1) (400 SE2d 657) (1990). Included in evidence supporting this defense is that the purpose of the event was to honor a new company executive and to ease the transition of business operations under his direction. There was evidence that the invited employees, who were all upper level management employees, were urged to attend and that plaintiff felt compelled to attend. However, there was also evidence that attendance was optional and that the benefits to the employer were merely the building of morale.

I agree with Division 2 except with respect to the caveated overruling of *Bunch v. Stanton,* 174 Ga. App. 233 (329 SE2d 538) (1985). The legal principles upon which it was based are sound and extant. The facts are distinguishable from the undisputed facts in Moon's case, and the opinion carefully limited the holding to "the undisputed facts of [Bunch's] case." Id. at 235. Here there was evidence that Lenker participated in, and even instigated, the forcing of people including Moon into the pool. There was evidence that Moon was not at the pool but was dragged there earnestly protesting, after Lenker pointed him out as the person next to be thrown in. *Bunch* does not "suggest that there is no duty [for hosts] to undertake to protect a social guest from an injury caused by the *reasonably anticipated misconduct* of another social guest," as the majority characterizes it. Quite different from the circumstances in *Bunch,* there is evidence that the host in this case not only was aware of the misconduct towards Moon in particular but was involved in it. Licensee Bunch's host was not even on the scene.

I am authorized to state that Chief Judge Sognier and Judge Andrews join in this opinion.

DECIDED JANUARY 28, 1992 —
RECONSIDERATION DENIED FEBRUARY 13, 1992 —

*Hart & McIntyre, George W. Hart, John C. McIntyre, Jr.*, for appellants.

*Drew, Eckl & Farnham, B. Holland Pritchard, Alston & Bird, T. Michael Tennant, Lokey & Bowden, Malcolm Smith, Savell & Williams, John C. Parker, Jennifer H. Chapin*, for appellees.