## A99A0540. ALDRIDGE v. TILLMAN.
(516 SE2d 303)

ELDRIDGE, Judge.

Appellant, Jay Aldridge, brought a premises liability suit against appellee, Geraldine Tillman, who is his grandmother, for injuries he incurred at her home during an altercation which occurred between him and his stepgrandfather, Gary Tillman.[1] Aldridge alleged that Mrs. Tillman was negligent in failing to keep her premises safe by not warning Aldridge of a known danger on her premises, i.e., that Mr. Tillman was contemplating physical violence toward him. In his sole enumeration of error, Aldridge contends that the trial court erred in granting summary judgment to Mrs. Tillman.

Construed most favorably to Aldridge, the non-movant, the facts

---

[1] Geraldine Tillman and Gary Tillman were divorced subsequent to the incident alleged in Aldridge's complaint.

of the case show the following: Aldridge was raised by Mr. and Mrs. Tillman. On December 24, 1994, Aldridge, who was 21 years of age and no longer resided in the Tillmans' home, attended a family gathering at the Tillman home. Aldridge arrived at the Tillman home between noon and 1:00 p.m. The family had an oyster roast and exchanged Christmas gifts. Aldridge testified that Mr. Tillman had been drinking throughout the day and that Mr. Tillman had appeared to be intoxicated since about 5:00 p.m. Aldridge also testified that he was aware Mr. Tillman had a violent personality when he was drinking. Aldridge went on to testify that he could tell when they were outside in the yard that Mr. Tillman was drunk and "wanted to start something." Although, he knew that Mr. Tillman was drunk and apt to start trouble, Aldridge, along with several other people, remained at the Tillman home to watch a movie after the rest of the family departed.

Between 7:00 p.m. and 8:00 p.m., Aldridge's roommate arrived to pick up Aldridge and joined the remaining guests in the Tillman living room. Aldridge testified that Mr. Tillman went into the kitchen area and "mumbled" something to Mrs. Tillman, which Aldridge could not understand. Mrs. Tillman told Mr. Tillman that he was drunk and that he should go to bed. Aldridge further testified that, as Mr. Tillman walked by him on Mr. Tillman's way into the bedroom, Mr. Tillman gave him a "mean" look. Aldridge testified that the next thing he knew, Mr. Tillman was coming up the hall with a knife in his hand.

Aldridge testified that Mrs. Tillman yelled "watch out Jay, he's got a knife" and attempted to stop Mr. Tillman from injuring him by physically putting her body between Aldridge and Mr. Tillman. Mr. Tillman made a six-inch cut on Jay's side and punctured his lung with the knife. Mrs. Tillman was also injured in the altercation.

Aldridge testified that, having grown up in the Tillman home, he was aware of previous incidents during which Mr. Tillman had behaved in a violent manner. Aldridge testified, that when he was between ten and twelve years of age, he would go to work with Mr. Tillman. When Aldridge did not know how to perform a task, Mr. Tillman would get "aggravated" and *threaten* to hit him with a 2″ x 4″ board or a pipe. Aldridge further testified that, on one occasion when he was four or five years of age, his grandparents were "fussing" as his aunt came to pick up him and his grandmother. As they were leaving in his aunt's vehicle, Mr. Tillman pulled out a gun and fired it. Aldridge did not know where Mr. Tillman shot the gun while they were leaving. Aldridge also testified that, even though he was not present, he had heard that Mr. Tillman had become angry at some police officers he had summoned to his home and had pulled a gun on the officers. Aldridge went on to testify that Mr. Tillman had

hit Mrs. Tillman on one occasion, which resulted in her being treated at the hospital.

Aldridge further testified that when he was young, Mrs. Tillman would try to protect him by sending him to a relative's house or to bed when Mr. Tillman became violent. Aldridge also testified that once he was old enough to understand that Mr. Tillman often became violent when he was drinking, he would try to stay away from him when he was intoxicated and upset.

By way of affidavit, Mrs. Tillman denied having any prior knowledge that Mr. Tillman planned to hurt Aldridge. Mrs. Tillman averred that she was in the kitchen when Mr. Tillman walked by Aldridge on his way to bed and did not see Mr. Tillman stare at Aldridge in a "mean" way and had no reason to believe Mr. Tillman was going to "start something" with Aldridge. Mrs. Tillman further averred that, when Mr. Tillman left the kitchen, she thought he was going to bed, and the first indication she had that Mr. Tillman might assault Aldridge was when Mr. Tillman emerged from the bedroom with a knife. Mrs. Tillman went on to aver that when she saw Mr. Tillman with the knife, she yelled at Aldridge to "watch out" and attempted to physically stop Mr. Tillman from assaulting Aldridge, which resulted in her being injured.

Aldridge testified that, prior to this incident, Mr. Tillman had merely threatened him and that, even though he was aware that Mr. Tillman was drunk and upset on the evening of December 24, 1994, he never expected Mr. Tillman to do more than "mouth off" or threaten him. Aldridge testified that he never expected Mr. Tillman to physically attack him. Aldridge further testified that Mrs. Tillman told him for the first time at some point after the December 24, 1994 incident that Mr. Tillman had made specific threats to harm Aldridge on two recent occasions: (1) approximately one to two months earlier, Mr. Tillman had hidden a crowbar under the sofa and was going to "jump on [Aldridge] with it" and (2) that Mr. Tillman had stated to her "he was mad and was going to start some trouble." On appeal, Aldridge argues that Mrs. Tillman failed to exercise ordinary care for his safety when she invited him to the Christmas party at her home and when she allowed him to stay after the other guests left without warning him of these specific recent threats made by Mr. Tillman toward him. *Held*:

1. "As a social guest [at the Tillmans'] home, [Aldridge] occupied the legal status of licensee. [Cit.]" *Strickland v. Strickland*, 198 Ga. App. 440, 441 (402 SE2d 66) (1991); *Hemphill v. Johnson*, 230 Ga. App. 478 (497 SE2d 16) (1998). " 'The owner of the premises is liable to a licensee only for willful or wanton injury.' OCGA § 51-3-2 (b)." *Davis v. Scott*, 232 Ga. App. 493, 494 (502 SE2d 332) (1998). However,

it is *usually* wilful or wanton not to exercise ordinary care *to prevent* injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a *dangerous act* being done or a *hidden peril* on one's premises. Thus as to a licensee *ordinary care and diligence* must be used *to prevent* injuring him after his presence is known or reasonably should be anticipated.

(Citations and punctuation omitted; emphasis in original.) *Wade v. Mitchell*, 206 Ga. App. 265, 267 (424 SE2d 810) (1992); *Lipham v. Federated Dept. Stores*, 208 Ga. App. 385 (430 SE2d 590) (1993), rev'd on other grounds, 263 Ga. 865 (440 SE2d 193) (1994); *Moon v. Homeowners' Assn. of Sibley Forest*, 202 Ga. App. 821, 823 (415 SE2d 654) (1992). This rule applies to cases involving active negligence, as distinguished from static negligence. *Wade v. Mitchell*, supra, 206 Ga. App. at 266-267; *Lipham v. Federated Dept. Stores*, supra, 208 Ga. App. at 387. Therefore, the danger must be known and foreseen by the property owner before a duty to protect exists. *Hackett v. Dayton Hudson Corp.*, 191 Ga. App. 442, 444 (382 SE2d 180) (1989); *Great A & P Tea Co. v. Cox*, 51 Ga. App. 880 (181 SE 788) (1935).

2. Ordinarily, even "where the [property owner's] negligence is shown, he would be insulated from liability by the intervention of an illegal act which is the proximate cause of the injury." (Citations and punctuation omitted.) *Burdine v. Linquist*, 177 Ga. App. 545, 546 (340 SE2d 198) (1986). Generally, "[a]n intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury thus breaking the causal connection between the defendants' negligence and the injury." (Citation and punctuation omitted.) *Alexander v. Sportslife*, 232 Ga. App. 538, 540 (502 SE2d 280) (1998); *Tucker Fed. &c. Assn. v. Balogh*, 228 Ga. App. 482, 484 (491 SE2d 915) (1997). However,

[Mrs. Tillman] is bound to exercise ordinary care to protect [Aldridge] from unreasonable risks of which [she] has superior knowledge, and if [she] has reason to anticipate criminal acts, [she] has the duty to exercise ordinary care to guard against injury caused by dangerous characters.

(Citations and punctuation omitted.) *Millan v. Residence Inn by Marriott*, 226 Ga. App. 826, 827-828 (487 SE2d 431) (1997); *Matt v. Days Inns of America*, 212 Ga. App. 792 (443 SE2d 290) (1994), aff'd, *Days Inns of America v. Matt*, 265 Ga. 235 (454 SE2d 507) (1995); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[Mrs. Tillman's] duty to exercise ordinary care to protect

[Aldridge] against third-party criminal attacks extends *only* to *foreseeable* criminal acts. And, only if [Mrs. Tillman] has reason to anticipate a criminal act, does . . . she then have a duty to exercise ordinary care to guard against injury from dangerous characters.

(Citations and punctuation omitted; emphasis in original.) *Doe v. Briargate Apts.*, 227 Ga. App. 408, 409 (489 SE2d 170) (1997).[2]

A criminal act by a third party may be foreseeable if the incident causing the injury is

substantially similar in type to previous criminal activities occurring on or near the premises at issue so that a reasonable owner or occupier of those premises would take ordinary precautions to protect his or her [guest] against the risk posed by that type of activity [because the risk of harm is reasonably foreseeable from such prior acts]. [Cits.]

*Doe v. Briargate Apts.*, supra, 227 Ga. App. at 409. For a criminal act to be substantially similar, it does not have to be identical. However, the prior crimes "should have put an ordinarily prudent person on notice that [Aldridge was] facing increased risks." *Matt v. Days Inns of America*, supra, 212 Ga. App. at 794. "All that is required is that the prior incident be sufficient to attract [Mrs. Tillman's] attention to the dangerous condition which resulted in the litigated incident." (Citation and punctuation omitted.) Id. at 794-795.

The test is whether the prior criminal activity was sufficiently and substantially similar to demonstrate [Mrs. Tillman's] knowledge that conditions on [her] property subjected [Aldridge] to unreasonable risk of criminal attack so that [Mrs. Tillman] had reasonable grounds to apprehend that the present criminal act was foreseeable.

(Citations and punctuation omitted.) *Millan v. Residence Inn by Marriott*, supra, 226 Ga. App. at 828.

In this case, there was no evidence showing that Mrs. Tillman had any basis to know, or reasonably to foresee from prior similar criminal acts, the danger of Mr. Tillman physically attacking

---

[2] A unique legal relationship exists between a landlord and his tenant and a hotel/motel owner and his patrons, which is contractual in nature. The legal relationship between a business owner and his customers has no contractual basis and is based solely upon an invitor-invitee relationship. While this case is different from the cases cited regarding the duties of these individuals and entities to protect their invitees from third-party criminal attack, the general principles of law for which they are cited are applicable to this case.

Aldridge with a knife. The evidence shows that, in the past when Mr. Tillman became intoxicated and angry, he made threats to Aldridge, but that he had never acted on such threats. Because there was no similarity between Mr. Tillman's prior threats, which were never acted upon, and the present incident of aggravated assault with a deadly weapon, such prior threats were not sufficiently similar to put Mrs. Tillman on notice of a dangerous condition that might subject Aldridge to an unreasonable risk of criminal injury by Mr. Tillman.

The act of Mr. Tillman discharging a gun 16 years earlier was not a substantially similar criminal act to make Mr. Tillman's present assault on Aldridge with a knife reasonably foreseeable to Mrs. Tillman. There was no evidence that Mr. Tillman discharged the gun at either Aldridge or Mrs. Tillman; to infer such facts would be mere speculation and conjecture based upon the pyramiding of inferences. *Miller v. Gerber Products Co.*, 207 Ga. 385, 388 (62 SE2d 174) (1950); *Ga. R. &c. Co. v. Harris*, 1 Ga. App. 714, hn. 3 (57 SE 1076) (1907). Even though Aldridge testified that Mr. Tillman shot a gun as Aldridge and Mrs. Tillman were leaving the house, Aldridge did not know if Mr. Tillman had shot the gun at him, Mrs. Tillman, or the car in which they were leaving, or whether Mr. Tillman had simply shot the gun into the air. "[S]peculation and conjecture [are] insufficient to create even an inference which would bar summary judgment in favor of [Mrs. Tillman]." (Citations omitted.) *Bunn v. Landers*, 230 Ga. App. 744, 745 (498 SE2d 109) (1998).

Once Mrs. Tillman saw Mr. Tillman coming up the hall with a knife, she exercised ordinary care to guard Aldridge against injury. Mrs. Tillman both verbally shouted a warning to Aldridge and attempted to physically stop Mr. Tillman from injuring him and received an injury herself in her attempt to protect him.

3. Moreover, in this case, Aldridge had equal or superior knowledge, as compared to Mrs. Tillman, of the possibility of a violent physical confrontation with Mr. Tillman. Both Mrs. Tillman and Aldridge were aware that Mr. Tillman had a violent personality when he was drinking and were both aware of incidents in the past when Mr. Tillman had made threats against Aldridge. In addition, they both were aware that Mr. Tillman was intoxicated on the day of the incident.

However, in addition to the knowledge that they both had in common, the evidence shows that Aldridge and not Mrs. Tillman was aware that Mr. Tillman was angry at him on the day of the incident. It was Aldridge, not Mrs. Tillman, who witnessed Mr. Tillman walk by and give Aldridge a "mean" look on the way to the bedroom, and Aldridge admitted that, prior to Mr. Tillman and him coming into the house, he knew that Mr. Tillman was acting like he wanted to "start something." There is no evidence that Mrs. Tillman was aware that

Mr. Tillman was acting like he was going to "start something" while Mr. Tillman and Aldridge were outside. Aldridge alone knew of Mr. Tillman's threats to him with the pipes and boards at work.

Aldridge contends that Mrs. Tillman had superior knowledge based on her knowledge that: (1) Mr. Tillman had hidden a crowbar under the sofa approximately one to two months earlier and stated that he was going to "jump on [Aldridge] with it" and (2) Mr. Tillman's statement that "he was mad and was going to start some trouble" is without merit. Aldridge's testimony concerning what Mrs. Tillman may have told him after this incident is hearsay and has no probative value. "It is well-established that all hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment. [Cits.]" (Punctuation omitted.) *State Farm &c. Ins. Co. v. Swetmon*, 228 Ga. App. 538, 539 (492 SE2d 678) (1997).

Such statements would not be a hearsay exception as an admission against interest. "Such admissions generally consist of voluntary out-of-court statements made by a party of the existence or truth of certain facts which are inconsistent with his contentions and which constitute prima facie evidence of the existence of those facts." (Citations omitted.) *United Waste, Ltd. v. Fulton County*, 184 Ga. App. 694, 696 (362 SE2d 476) (1987). The two alleged statements upon which Aldridge relies are not inconsistent with Mrs. Tillman's contentions, and they are not prima facie evidence that Mrs. Tillman had superior knowledge. See *Freeman v. Farr*, 184 Ga. App. 830 (363 SE2d 48) (1987). The statements Mrs. Tillman allegedly related to Aldridge after this incident are simply cumulative evidence of similar statements made by Mr. Tillman in the past that, even by Aldridge's admission, neither party expected Mr. Tillman to carry through with and could be construed any differently only in hindsight. Further, such statements would not be admissible as prior inconsistent statements as they did not contradict or were not inconsistent with Mrs. Tillman's affidavit, which was the only sworn statement by her that was part of the record on summary judgment. See *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). Mrs. Tillman was never deposed and asked if she made such statements.

Here the facts conclusively show by plain, palpable, and undisputed evidence that: (1) Mrs. Tillman did not have reasonable grounds from prior similar criminal acts to apprehend that the present criminal act was foreseeable, and (2) Aldridge had equal, if not superior knowledge, of the dangerous possibility of Mr. Tillman's assault. Thus, the grant of summary judgment by the trial court in favor of Mrs. Tillman was proper.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED APRIL 12, 1999.

*Gibson & Spivey, Andrew C. Spivey,* for appellant.
*Whelchel, Brown, Readdick & Bumgartner, Terry L. Readdick,
Bradley J. Watkins,* for appellee.