A02A0914. RIGDON v. KAPPA ALPHA FRATERNITY.
A02A1444. RIGDON v. CORPORATION OF MERCER
UNIVERSITY.
(568 SE2d 790)

RUFFIN, Judge.

Jennifer Rigdon was attacked by a guest during a party she attended at the Kappa Alpha Fraternity ("KA") house on the Mercer University campus. Rigdon sued KA, the Corporation of Mercer University (the "University"), and her assailant, Sara Richardson, for damages allegedly caused by the altercation. KA and the University moved for summary judgment, and the trial court granted both motions. In Case No. A02A0914, Rigdon challenges the court's grant of summary judgment to KA, and in Case No. A02A1444, she asserts that the court erred in granting summary judgment to the University. Because both appeals involve common facts and issues, we consolidated them for review. For reasons that follow, we affirm the court's judgment in both cases.

To prevail on their respective motions for summary judgment, KA and the University were required to show that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law.[1] On appeal from the trial court's grant of summary judgment, we apply a de novo review of the evidence to determine whether KA and the University met this burden.[2] We also construe the evidence in a light most favorable to Rigdon, as the party opposing the motions.[3]

Viewed in this light, the evidence shows that Rigdon enrolled at

---

[1] See *Walker v. Hammock*, 246 Ga. App. 640-641 (541 SE2d 439) (2000).
[2] See id. at 640.
[3] See *Moon v. Homeowners' Assn. of Sibley Forest*, 202 Ga. App. 821 (1) (415 SE2d 654) (1992).

the University in the fall of 1996. The following spring she joined the Alpha Delta Pi sorority, but quit that summer because she disagreed with certain practices of the organization. It appears that Rigdon's departure caused "a lot of controversy . . . within the sorority."

On October 30, 1999, three fraternities hosted a Halloween party at the KA house. As required by the University's student handbook, the hosts had previously submitted a social event registration form which was approved by the Center for Student Involvement and Leadership. The handbook also required the hosts to designate event monitors, who were "organizational" members, to sign in guests at the party. KA had the requisite number of monitors at the party.[4]

Rigdon was invited to attend the party by a KA member, Adam Montgomery, and by her roommate, who was a member of another hosting fraternity. Shortly after Rigdon arrived at the party, she found Montgomery. Rigdon and Montgomery danced and then went outside and had an alcoholic drink that Montgomery served from the trunk of his car. Later in the evening, while Rigdon and Montgomery were standing beside the dance floor, a woman wearing a pink tube top, later identified as Amy Ussery, inexplicably threw a cold drink on them.

Rigdon remained at the party, and after dancing with a man whom she mistook as Montgomery dressed in a new costume, she followed him to a room upstairs. Rigdon sat on a couch with the man, and after kissing him, she "saw his wig pushed back and . . . realized it wasn't [Montgomery]," but someone named Chad. Chad told Rigdon that he was going downstairs and suggested that she wait a few minutes before leaving the room so people would not have the wrong impression about what they were doing.

After Chad left, Rigdon waited on the couch. According to Rigdon, "[w]hile [she] was [lying] there, someone poured a drink on [her]." Due to the sting of the alcohol, Rigdon momentarily closed her eyes, and when she opened them, she saw three girls. In her deposition, Rigdon testified: "I didn't know any of them. The girl wearing the pink tube top[, Ussery,] was there. [And there was a] girl with short straight blonde hair, and a girl with brown hair."

As Rigdon attempted to leave the room, Ussery pushed her and another woman grabbed her hair. Rigdon tried to leave again, and "some words were exchanged." Rigdon testified that she did not recall much of what happened next: "I remember the girl with the short blonde hair being extremely angry, and the next thing I remember I was on the floor, on my hands and knees, with people shouting and

---

[4] Although the University states in its brief that KA did not have any such monitors, it does not cite any evidence supporting this statement.

panicking." Apparently, the blonde haired woman, later identified as Sara Richardson, had repeatedly punched Rigdon in the face until she lost consciousness.[5] When Rigdon regained consciousness, a man in a pumpkin suit and another person were tending to her injuries, which included a broken nose.

In her complaint against KA and the University, Rigdon repeatedly claimed that the defendants were negligent in failing to provide reasonable security at the party. Rigdon further alleged that these defendants' failure to protect her constituted negligent and intentional infliction of emotional distress. In granting summary judgment to KA and the University, the trial court found that, because Rigdon's injuries were caused by the unforeseeable criminal act of a third party, neither defendant was liable for those injuries as a matter of law.

## Case No. A02A0914

1. On appeal, Rigdon asserts that the trial court erred in granting summary judgment to KA because the fraternity failed to protect her, despite receiving notice that she might be the victim of a potential altercation. According to Rigdon, the incident in which Ussery threw a drink on her and Montgomery "was sufficient to attract the hosts' attention to the existence of a potentially dangerous condition, which resulted in the incident complained of." We disagree.

As a social guest at the KA party, Rigdon was a licensee.[6] As such, KA would generally be liable to her only for wilful or wanton injuries.[7] "However, it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises."[8] Accordingly, if a danger to a licensee is "known and foreseen by the property owner," then the owner must exercise ordinary care and diligence to protect that licensee from the peril.[9]

Applying these principles to this case, KA would be liable to Rigdon if KA "ha[d] reason to anticipate the misconduct of [Richardson,] the guest inflicting the injury," and nevertheless failed to exercise ordinary care to prevent the altercation.[10] Thus, Rigdon was required

---

[5] Although Richardson testified in her deposition that she and Rigdon were engaged in mutual combat, for the purpose of summary judgment we will adopt Rigdon's version of the events. See *Moon*, supra.

[6] See *Aldridge v. Tillman*, 237 Ga. App. 600, 602 (1) (516 SE2d 303) (1999).

[7] See id.

[8] (Punctuation and emphasis omitted.) Id. at 602-603.

[9] Id. at 603.

[10] (Punctuation omitted.) *Moon*, supra at 823 (2).

to point to some evidence establishing that Richardson's violent attack on her was foreseeable to KA.[11] To be foreseeable, Richardson's attack must have been "substantially similar in type to previous criminal activities occurring on or near [KA's fraternity house]. . . . For a criminal act to be substantially similar, it does not have to be identical. However, the prior crimes should have put an ordinarily prudent person on notice that [Rigdon] was facing increased risks."[12]

Rigdon has not shown that Richardson's attack was foreseeable to KA. The fact that Ussery threw a drink on Rigdon and Montgomery was insufficient to alert KA that Richardson might brutally beat Rigdon. As for the earlier incident, Rigdon testified that "[a] girl came up and poured a drink on [Montgomery] and her." Rigdon was confused by the inexplicable incident and shocked because the drink was cold. At the time, Rigdon did not know Ussery, and she has cited no evidence that Montgomery knew Ussery either. Likewise, Rigdon has pointed to no evidence that either she or Montgomery knew what precipitated the act. Whatever motivated Ussery, the record reveals that her misconduct was not of such a serious nature as to cause any real concern to Rigdon, who stayed at the party. And there is no evidence that this isolated incident was noticed by anyone other than Rigdon and Montgomery.

Under the circumstances, we cannot discern how this relatively benign incident should have put KA on notice that Rigdon would later be brutally beaten by another individual. Without belaboring the point, having a cold drink thrown on one by a stranger does not make it foreseeable that another stranger will later beat one into unconsciousness.[13] Aside from the drink-throwing incident, Rigdon has cited no evidence showing that KA had any reason to expect that Richardson might attack her. Although Rigdon later discovered that Ussery and Richardson were both members of Alpha Delta Pi, there is no evidence that anyone from the fraternity knew of this relationship. And even if it was known to KA, Rigdon fails to show how knowledge of this relationship would have made Richardson's violent attack on her foreseeable to the fraternity.

Furthermore, it is undisputed that there were no other prior incidents that would have made Richardson's attack foreseeable. There is no evidence that anyone associated with KA was aware that Richardson harbored any personal animosity toward Rigdon, nor

---

[11] See *Aldridge*, supra at 603-604; *Moon*, supra at 823-824.

[12] (Punctuation omitted.) *Aldridge*, supra at 604 (2).

[13] See id. at 605. Compare *Moon*, supra (because party host knew that some of his guests were throwing other unwilling guests into the shallow end of a pool and that the plaintiff was an intended target of this activity, the host was required to exercise reasonable care to prevent plaintiff's injury at the hands of the other guests).

does the evidence show that Richardson had ever engaged in such conduct before. To the contrary, the record shows that Richardson had never been disciplined by the University for any reason. In addition, the University's former Dean of Student Affairs, who had been with the University for 23 years at the time of the incident, stated that he was unaware of any prior altercations, fights, or other similar incidents at a fraternity during his tenure. And Rigdon likewise conceded that she had no personal knowledge of any such incidents occurring at the University.

In the absence of any evidence of a substantially similar criminal attack which would have made Richardson's conduct foreseeable, the trial court properly granted KA's motion for summary judgment on Rigdon's negligence claims.[14]

2. Rigdon also argues that the student handbook required KA to implement security measures to assure the safety of its party guests and the fraternity is, therefore, absolutely liable for her injuries. According to Rigdon, "she was owed a duty of care that would ensure her safety while on KA's premises." But the record discloses that KA utilized event monitors as required by the handbook, and Rigdon has cited no evidence to the contrary. Furthermore, although a property owner may be held liable for injuries arising out of foreseeable criminal acts of third parties,[15] we are unaware of any authority imposing absolute liability for unforeseeable criminal acts. This argument is without merit.

3. We also reject Rigdon's assertions that the trial court erred in granting KA summary judgment on her claims of negligent and intentional infliction of emotional distress. Rigdon relies on the same allegations of wrongful conduct that we addressed, and rejected, in Division 1. Thus, for the reasons stated there, we conclude that KA did not engage in any extreme and outrageous conduct, and the trial court properly granted summary judgment in favor of KA on these claims.[16]

---

[14] See *Walker*, supra at 641-642 (1) (party guest intentionally pushing another guest off deck was not reasonably foreseeable to host); *Hunter v. Cabe Group*, 244 Ga. App. 162, 164 (535 SE2d 248) (2000) ("[t]hat the attacker might have been loud, rowdy, and inebriated was not enough to put the proprietor on notice of an impending attack on another customer"); *Aldridge*, supra at 606 (earlier threats and prior incidents insufficient to make assault with knife on guest foreseeable to hostess); *Ableman v. Taco Bell Corp.*, 231 Ga. App. 761, 762-763 (1) (501 SE2d 26) (1998) (physical attack unforeseeable even where evidence showed that assailant verbally threatened victim earlier in the evening).

[15] See *Aldridge*, supra at 603-604.

[16] See *Norfolk Southern R. Co. v. Spence*, 210 Ga. App. 284, 285-286 (435 SE2d 680) (1993).

## Case No. A02A1444

4. Like her appeal against KA, in this appeal Rigdon asserts that the trial court erred in granting summary judgment to the University because the defendant should have foreseen Richardson's attack. To support this assertion, Rigdon presents a lengthy dissertation on the law concerning the foreseeability of intervening criminal acts. In her discussion, however, Rigdon does not point to any evidence that she claims rendered the attack foreseeable to the University. Instead, Rigdon argues that, because she was a student at a church-affiliated university that purported "to eschew the corruption of, among other vices, alcohol consumption," it had a duty to protect her from the physical violence that often accompanies such consumption. Rigdon further argues that "it is readily apparent that [the University] enacted [the security requirements in its student handbook] because it had knowledge from previous occasions on its campus which involved personal violence from alcohol consumption and realized the need to protect the safety of social function attendees."

These arguments are without merit. As for Rigdon's claim that the University should have foreseen the attack, in light of the fact that she has cited no evidence to support this argument, and in view of our discussion of the evidence in Division 1, we conclude that Richardson's conduct was unforeseeable to the University. To the extent Rigdon claims that the University is liable because Montgomery was serving alcohol out of the trunk of his car, there is no evidence cited that alcohol played any role in the incident. Moreover, even if Montgomery's makeshift bar was somehow implicated, we do not see how that would render the University liable.[17] Finally, contrary to Rigdon's apparent belief that the University owed her a heightened duty of care, we have recognized that universities owe their students "a duty of reasonable care, [and that] college administrators do not stand in loco parentis to adult college students."[18] The mere fact that the University is church-affiliated does not change the analysis. Accordingly, we conclude that the trial court properly granted the University's motion for summary judgment on Rigdon's negligence claims.[19]

5. As with her appeal concerning KA, Rigdon does not rely on any additional conduct to support her argument that the trial court

---

[17] See *Kappa Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890, 892-893 (1) (473 SE2d 213) (1996) (fraternity not liable for alcohol-related injuries merely because it sponsored party at which alcohol was consumed where evidence showed that the fraternity did not furnish the alcohol).

[18] (Citation omitted.) *Niles v. Bd. of Regents &c. of Ga.*, 222 Ga. App. 59, 60 (1) (473 SE2d 173) (1996).

[19] See *Walker*, supra; *Aldridge*, supra; *Ableman*, supra..

erred in granting summary judgment to the University on her claims for negligent and intentional infliction of emotional distress. Thus, for the reasons stated above, we conclude that the trial court properly granted the University summary judgment on these claims, as well.

*Judgments affirmed. Smith, P. J., and Ellington, J., concur. Eldridge, J., disqualified.*

DECIDED JULY 11, 2002 — 

*Burnette & Driggers, G. Samuel Burnette, Benjamin D. Driggers, Christopher J. Ramig*, for appellant.

*Jones, Cork & Miller, Thomas C. Alexander, Sharon H. Reeves, Chambless, Higdon & Carson, Mary M. Katz, Morriss, Lober & Dobson, William G. Dobson*, for appellees.