# THIRD DIVISION
# ELLINGTON, P. J.,
# ANDREWS and RICKMAN, JJ.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
http://www.gaappeals.us/rules

**February 27, 2018**

# In the Court of Appeals of Georgia

A17A1713. YA VAN v. SIV CHENG KONG AS RI-065 ADMINISTRATRIX OF THE ESTATE OF CHHENG SIV VOIGT et al.

RICKMAN, Judge.

Appellant Ya Van was stabbed repeatedly in the neck by Chhay Hour, her daughter's estranged husband, who then also stabbed and killed Van's daughter, his estranged wife. Van's other daughter, Siv Cheng Kong, as administratrix of the murder victim's estate and guardian of her children, sued Van, alleging that Van was negligent when she opened the door and allowed Hour into her home. Van filed a motion for summary judgment, which the trial court denied. Because we conclude that this case represents an obvious example of a property owner who could not foresee the violent criminal actions of a third-party, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Simmons v. Prince*, 343 Ga. App. 175 (806 SE2d 627) (2017).

So construed, the evidence shows that in August 2014, the murder victim and her five children were staying with Van in Van's house so that Van could help care for the children. Hour was the father of one of the victim's children. On the afternoon in question, Hour knocked on Van's door, and Van answered. Van informed Hour that his daughter was at school, but he nevertheless requested to speak to the victim. Van allowed Hour to enter the house for that purpose. Shortly thereafter, Hour slit Van's throat and repeatedly stabbed her in the neck and then fatally stabbed the victim.

Kong, acting as administratrix of the victim's estate and as guardian of her children, then filed the instant lawsuit against Van, alleging that Van was negligent in failing to keep her home safe "from known dangers and dangerous conditions on the property." Van filed a motion for summary judgment, arguing in part that the stabbings were unforeseeable and that she breached no duty to the victim by opening

2

the door for Hour. The trial court denied Van's motion after concluding that material questions of fact remain as to whether "Van's failure to recognize the danger . . . Hour posed was willful or wonton." We granted Van's application for interlocutory appeal to review the trial court's order.

As the trial court held, and the uncontroverted evidence shows, the victim was a licensee in Van's home at the time of the crime, rendering Van liable only for "willful or wanton injury." See OCGA § 51-3-2 (a), (b); *Trulove v. Jones*, 271 Ga. App. 681 (1) (610 SE2d 649) (2005) (defining "wanton conduct" as "that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent to do harm or inflict injury") (citation and punctuation omitted). That designation, however, is largely irrelevant when it comes to Van's liability for the criminal acts of third-parties, because "it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done." (Citation and punctuation omitted.) *Rigdon v. Kappa Alpha Fraternity*, 256 Ga. App. 499, 501 (1) (568 SE2d 790) (2002).

To that end, a property owner, even if negligent, is generally insulated from liability when an injury is caused by an intervening illegal act. See *Aldridge* v.

3

*Tillman*, 237 Ga. App. 600, 603 (2) (516 SE2d 303) (1999) ("[A]n intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury thus breaking the causal connection between the defendants' negligence and the injury.") (citation and punctuation omitted). Nevertheless, a property owner who has reason to anticipate criminal acts "has the duty to exercise ordinary care to guard against injury caused by dangerous characters." (Citation and punctuation omitted.) Id. "This duty extend[s] only to those criminal acts that [are] foreseeable." (Citation omitted.) *McDaniel v. Lawless*, 257 Ga. App. 187, 189 (570 SE2d 631) (2002); see *Aldridge*, 237 Ga. App. at 603 (1) ("[A] danger must be known and foreseen by the property owner before a duty to protect exists.").

It follows that Van had a duty to exercise ordinary care to guard the victim against the injury caused by Hour only if she had reason to anticipate his criminal acts. See *McDaniel*, 257 Ga. App. 188-189; *Aldridge*, 237 Ga. App. at 603 (1). To establish foreseeability, any prior event relied upon "must be substantially similar, but not identical" to the act that resulted in the victim's injury, or in this case, death. (Citation and punctuation omitted.) *McDaniel*, 257 Ga. App. at 189. Specifically, it must "demonstrate [Van's] knowledge that [Hour's] dangerous propensities subjected

4

[the victim] to unreasonable risk of criminal attack so that [Van] had reasonable grounds to apprehend that the present criminal act was foreseeable." (Citation and punctuation omitted.) Id.

The record in this case is devoid of any evidence from which to conclude that Van had reason to anticipate Hour's violent conduct. There is no evidence that Hour had a criminal record, or that he had previously committed a crime of any kind. There is no evidence that Hour had violent propensities, or that Van knew of Hour committing prior acts of violence against the victim or any other person.[1] There is no evidence that Hour previously misused a knife, or mishandled a weapon of any kind. Finally, there is no evidence that any crime had previously been committed at Van's residence. Indeed, appellee Kong and the victim's children who were deposed and on behalf of whom the suit was filed[2] each admitted that there was no reason for Van to anticipate that Hour would have a knife or commit any act of physical violence on the day of the crime.

---

[1] One of the victim's daughter's allegedly saw Hour push the victim on one occasion, but the record is undisputed that Van was not made aware of this prior incident.

[2] Two of the victim's five children were deposed; the remaining three were too young.

The sole evidence upon which Kong relies in support of her negligence claim is that in the years before the killing, Hour and the victim had engaged in verbal arguments regarding the custody of their daughter; Hour had on one prior occasion called the police to Van's house after learning that the victim had taken their daughter to Cambodia, but left without incident; and Hour called the victim a Cambodian word meaning "whore" and told Van that he would get "revenge" in their custody battle, which Van deposed that she understood to mean that he would take their dispute to court. This evidence is legally insufficient to create a jury question on the issue of whether Van knew or had reason to believe that Hour was capable of or contemplating deadly violence. See *McDaniel*, 257 Ga. App. at 189 (affirming the trial court's ruling that property owner's knowledge that her neighbor "could be mean when he was drinking" and had "struck his wife, knocking her teeth out" was insufficient to put the property owner on notice that he was prone to deadly violence with a handgun); *Aldridge*, 237 Ga. App. 604-605 (2), (3) (affirming grant of summary judgment to property owner who could not foresee that her husband posed a physical threat to the victim, who he stabbed, because "there was no similarity between [her husband's] prior threats, which were never acted upon, and the present

6

incident of aggravated assault with a deadly weapon"); see also *Rigdon*, 256 Ga. App. at 502-503 (1).

This is not a close case. The trial court clearly erred in denying Van's motion for summary judgment.

*Judgment reversed. Ellington, P. J., and Andrews, J., concur.*