**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 13, 2019**

# In the Court of Appeals of Georgia

A19A1016. BROWN v. DICKERSON.

BARNES, Presiding Judge.

Janice Dickerson was injured when she tripped and fell down brick stairs in Charles Brown's backyard. Dickerson sued Brown, alleging that she had tripped on an extension cord on the stairs and that he was liable for her injuries. Brown moved for summary judgment, contending that Dickerson was a licensee and had failed to come forward with any evidence of willful or wanton conduct. The trial court denied Brown's motion but granted him a certificate of immediate review. Following the grant of his application for interlocutory appeal, Brown appeals, contending that the trial court erred in denying his motion for summary judgment. Because there was no evidence that Brown placed the extension cord on the stairs or knew or had reason to

know that the cord was there, the trial court erred in denying his motion for summary judgment, and we therefore reverse.

Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). A defendant can succeed on summary judgment

> by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the] plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of [the] plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

*Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991). "On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party." (Punctuation and footnote omitted.) *Smith v. Found*, 343 Ga. App. 816, 817 (806 SE2d 287) (2017).

So viewed, the record reflects that on the date of the incident, Brown allowed his friend, Janice Rogers, to have a birthday party at his residence. Brown knew that

2

Rogers wanted to sit outside on the back porch near his pool and listen to music with her friends. Brown's backyard was tiered and included a set of brick stairs. Brown had owned the house for approximately 20 years, and the stairs were there when he purchased the residence.

Among other guests, Rogers invited her friend, Dickerson, to her birthday party.[1] When Dickerson arrived at Brown's residence for the party, the weather was good and it was dark outside. Dickerson took a path to the back of Brown's house and came to the brick stairs that would lead her to the pool area. According to Dickerson, although there were lights outside the house, the lighting conditions near the outside stairway were dim. As Dickerson descended the stairs, she look straight ahead and never looked down. Dickerson felt something hit her foot on one of the steps, causing her to trip and fall to the ground. As she was being carried into Brown's house after the fall by other partygoers, Dickerson looked back at the stairs and saw an orange extension cord draped over three or four stairs in the area where she tripped. In her deposition, Dickerson testified that she did not see the extension cord before her fall and did not know who put the cord out or how long it had been there before she

---

[1] Brown did not know Dickerson.

descended the stairway. She testified that the extension cord did not blend into the stairs but was obscured by the dim lighting.

Earlier on the day of the party, Brown had been doing yard work in his backyard with another person whom he had hired to help. Brown testified in his deposition that he used yard equipment that day, but that all of his equipment was gasoline operated, that he did not use an extension cord for the work, and that he did not place, leave, or see a cord on the stairs that day. Brown further testified that he departed from his residence before the party to run errands and did not return until after Dickerson had fallen. According to Brown, he walked through his backyard after he completed his yard work to make sure that everything was picked up, and when he left the property to run errands, no cord was present on the stairway. Brown testified that he owns a couple of orange extension cords but did not recall having ever placed one on the outside stairs since he moved into the house.

Brown testified that between five and ten guests were at his house on the night of the party. Dickerson testified that after she fell and was carried into Brown's residence, she noticed that there were "a lot of people in the house."

Dickerson undisputedly was a social guest on Brown's property and thus was a licensee. See *Thompson v. Oursler*, 318 Ga. App. 377, 378 (733 SE2d 359) (2012)

("Georgia has adopted the rule that a social guest is not an invitee but is a licensee.") (citation and punctuation omitted). Under Georgia premises liability law, the general rule is that "the duty owed to an invitee is greater than that owed to a licensee." *Jarrell v. JDC & Assoc.*, 296 Ga. App. 523, 525 (675 SE2d 278) (2009). A property owner owes a duty to invitees to exercise ordinary care to keep the premises and approaches "in a reasonably safe condition." (Citation and punctuation omitted.) *Boyd v. Big Lots Stores*, 347 Ga. App. 140, 141 (1) (817 SE2d 698) (2018). See OCGA § 51-3-1. A property owner owes a more narrow duty to licensees not to injure them willfully or wantonly. OCGA § 51-3-2 (b); *Van v. Kong*, 344 Ga. App. 754, 755 (811 SE2d 474) (2018). Willful misconduct "is based on an actual intention to do harm or inflict injury," and wanton misconduct "has been described as that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent." (Citations and punctuation omitted.) *Ga. Dept. of Transp. v. Strickland*, 279 Ga. App. 753, 754 (1) (632 SE2d 416) (2006).

Notably, however,

[i]t is also usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be or may reasonably be expected to be, within range of a dangerous act being done or a hidden peril on one's premises. In other words, a possessor of land is

5

subject to liability for physical harm caused to licensees by a condition on the land if, *but only if*, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved. Where a licensee has equal knowledge of the dangerous condition or the risks involved, there is no wilful or wanton action on the part of the owner and there is no liability to the licensee.

(Citations and punctuation omitted; emphasis supplied.) *Manners v. 5 Star Lodge & Stables*, 347 Ga. App. 738, 741 (3) (820 SE2d 754) (2018). See *Aldridge v. Tillman*, 237 Ga. App. 600, 603 (1) (516 SE2d 303) (1999); *Wade v. Mitchell*, 206 Ga. App. 265, 267 (2) (c) (424 SE2d 810) (1992). "Therefore, the danger must be known and foreseen by the property owner before a duty to protect exists." *Aldridge*, 237 Ga. App. at 603 (1). See *Thompson v. Oursler*, 318 Ga. App. 377, 378 (733 SE2d 359) (2012) (licensee must come forward with evidence that property owner knew or had reason to know of dangerous condition that caused licensee's injury).

Mindful of this legal framework, we conclude that summary judgment should have been granted to Brown because there was no evidence that the extension cord

6

was on the stairs before he left to run errands, and thus no evidence that he placed the cord on the stairs or knew or had reason to know that the cord was there and posed a hazardous condition to Dickerson as one of the partygoers. As noted above, during his deposition, Brown testified that he did not place, leave, or see an extension cord on the stairs; that he performed yard work on the day of the party but with gas-operated equipment; and that he checked his backyard before the party and there was no cord on the stairs.

> Where, as here, direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.

(Citations and punctuation omitted.) *Haley v. Regions Bank*, 277 Ga. 85, 89 (1) (586 SE2d 633) (2003).[2] Dickerson failed to make such a showing in this case.

---

[2] "Circumstantial evidence can be described as evidence which does not constitute direct proof with regard to the issue of fact or the hypothesis sought to be proven by the evidence; rather, circumstantial evidence constitutes proof of other facts consistent with the hypothesis claimed." (Citation and punctuation omitted.) *Patterson v. Kevon, LLC*, 304 Ga. 232, 236 (818 SE2d 575) (2018).

Dickerson testified in her deposition that she did not know who put the extension cord out on the stairway or how long it had been there, and there were no affidavits or deposition testimony from any partygoers or other witnesses regarding the presence of the cord, the placement of the cord, the owner of the cord, or the purpose for which the cord was being used. Additionally, it is unclear from the record what happened to the extension cord after Dickerson fell, and no photographs of the cord were introduced into evidence. In the absence of the cord or any photographs of it, Brown was never asked during his deposition to identify the specific cord upon which Dickerson tripped.

Given that there was no direct evidence supporting her position, Dickerson relied on circumstantial evidence in an effort to support her assertion that Brown knew of or placed the extension cord on the stairs before the party, namely, that it was Brown's house, that he did yard work that day, and that he owned extension cords that were orange. However, none of these facts contradicted Brown's account of that day, nor did they *demand* a finding that the cord was on the steps before the party and that Brown placed it there or had reason to see it before he ran errands. This is particular true since there were partygoers at Brown's house when he was not there who could have hooked up an extension cord for use during the pool party.

8

"[I]n passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." (Citation and punctuation omitted.) *Patterson*, 304 Ga. at 236. And "for an inference drawn from circumstantial evidence to be sufficient to create a genuine issue of fact precluding summary judgment, it must be reasonable and must amount to more than mere speculation, conjecture, or possibility." (Citation and punctuation omitted.) *Winder v. Paul Light's Buckhead Jeep Eagle Chrysler Plymouth*, 249 Ga. App. 707, 712 (3) (549 SE2d 515) (2001).

Based on these principles, and in light of the record in this case, Dickerson failed to come forward with sufficient circumstantial evidence to create a genuine issue of material fact as to whether Brown placed the extension cord on the stairs before the party or had reason to know that it was there and posed a dangerous condition to partygoers. See *Patterson*, 304 Ga. at 236 (plaintiff's claim can survive summary judgment based on circumstantial evidence if that evidence shows other theories to be "*less probable*") (emphasis in original);*Rosales v. Davis*, 260 Ga. App. 709, 712 (2) (580 SE2d 662) (2003) ("Before circumstantial evidence can have any probative value to rebut or contradict direct and positive testimony of an

unimpeached witness of the alleged facts in question, such evidence must point at least more strongly to a conclusion opposite to the direct testimony. It is not sufficient that such circumstantial evidence points equally one way or the other.") (citation and punctuation omitted).[3] Rather, a jury would be left to speculate from the circumstantial evidence as to when the cord was placed on the steps (before or during the party) and who placed it there (Brown or one of the partygoers). Consequently,

[3] See also *Thompson*, 318 Ga. App. at 379 (homeowner was entitled to summary judgment, where there was an absence of any evidence in the record that he knew or should have known of the dangerous condition that caused the social guest's injury); *Norman v. Jones Lang Lasalle Americas*, 277 Ga. App. 621, 625 (1) (627 SE2d 382) (2006) (plaintiff who tripped and fell over boxes on floor failed to show that defendant left the boxes there or knew that the boxes were there before he fell; defendant denied placing the boxes on the floor, and plaintiff's claim that "common sense dictates" that defendant left the boxes on the floor of the office was insufficient to create a jury question); *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 683 (3) (a) (498 SE2d 748) (1998) (plaintiff's claim that defendant must have spilled the water on the floor upon which she slipped was unsupported by an evidence; plaintiff was not entitled to an inference that defendant must have caused the spill while cleaning the floor, where a jury would be left to speculate from the available evidence as to whether spill was caused by the defendant or some other source); *Adams v. Servpro of Macon*, 189 Ga. App. 438, 438 (375 SE2d 894) (1988) (in case where plaintiff alleged that rug cleaner had negligently failed to lock doors to office building and that arsonists had later entered through those doors and started a fire, court found that circumstantial evidence relied upon by plaintiff to show that cleaner had left doors unlocked had no probative value; fact that doors to building were unlocked when fire department arrived was not inconsistent with rug cleaner's direct testimony that he locked door when he left building earlier that night before the arsonists entered and started fire).

Dickerson could not succeed on her claim, and the trial court therefore erred in denying Brown's motion for summary judgment.[4]

*Judgment reversed. Mercier and Brown, JJ., concur.*

---

[4] We note that Dickerson couches her claim as one of "active negligence." There is an apparent conflict in our cases regarding whether a claim of active negligence can encompass negligent conduct by the property owner that occurs before the plaintiff enters the premise. Compare *Belcher v. Kentucky Fried Chicken Corp.*, 266 Ga. App. 556, 559 (1) (597 SE2d 604) (2004) (physical precedent only) (no active negligence where restaurant employee mopped floor before plaintiff entered the restaurant and slipped on the still-wet floor); *Brownlee v. Winn-Dixie Atlanta*, 240 Ga. App. 368, 369 (2) (523 SE2d 596) (1999) (defining active negligence as "the proprietor's acts or omissions occurring at the time the plaintiff was on the premises"); *Hartley v. Macon Bacon Tune*, 234 Ga. App. 815, 818 (507 SE2d 259) (1998) (whole court) (indicating that active negligence principles would not apply if the uncontroverted evidence had shown that the alleged dangerous condition – water and oil on the shop floor – preexisted the plaintiff's arrival at the shop); with *Johnson v. Kimberly Clark*, 233 Ga. App. 508, 511 (504 SE2d 536) (1998) (whole court) ("Acts or omissions of an owner/occupier of the premises can create a dangerous condition on the premises; such acts or omissions constitute active negligence and do not become static just because the condition pre-exists the arrival of the [plaintiff].") (citations and punctuation omitted); *Bruno's Food Stores v. Taylor*, 228 Ga. App. 439, 443-444 (491 SE2d 881) (1997) (physical precedent only) (defendant's acts and omissions related to use of floor scrubbing machine constituted active negligence, even if those acts and omissions occurred before plaintiff arrived at store); *BBB Svc. Co. v. Glass*, 228 Ga. App. 423, 433-434 (2) (491 SE2d 870) (1997) (physical precedent only) (improper treatment of restaurant floor with foam prior to arrival of plaintiff who subsequently slipped on floor constituted "active negligence in the class sense"). We need not resolve this issue, however, in light of our conclusion that there was no evidence creating a genuine issue of material fact as to whether Brown placed the extension cord on the stairs or knew or had reason to know that it was there before he left to run errands.

11