## A00A2305. BARTLETT v. MAFFETT et al.
### (545 SE2d 329)

MIKELL, Judge.

Forrest Bartlett, as next friend for Adam Bartlett, brought this premises liability action against Roger Keith Maffett and Sue Maffett seeking damages for injuries Adam Bartlett sustained while playing in the Maffetts' backyard. Bartlett appeals the trial court's grant of summary judgment to the defendants. For reasons stated below, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence shows that on November 14, 1998, Forrest Bartlett and his son, Adam, a minor, visited the Maffetts' home. When Forrest and Adam Bartlett arrived, Sue Maffett and her daughter, Pam Ingram, along with Ingram's two minor children, Charlie and Jamie Gruber, were in the backyard. The record does not reveal the ages of any of the minors. Forrest and Adam Bartlett walked up to Sue Maffett and Ingram in the backyard. Charlie Gruber drove up to the group on a four-wheeler, which was owned by the Maffetts and housed in a shed on their property. Sue Maffett told Charlie to park the four-wheeler in the shed and went into her house. Forrest Bartlett and Ingram joined Sue Maffett in the house, leaving

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

the children outside. According to Sue Maffett's affidavit, either Forrest Bartlett or Ingram told her that Charlie was riding Adam on the four-wheeler.

After parking the four-wheeler in the shed, Charlie Gruber and Adam Bartlett played with a chain hoist that hung from a rolling pulley that was attached to an I-beam. The pulley could be moved back and forth along the I-beam. One end of the I-beam had an endcap so that the pulley and chain hoist could not be rolled off that end of the I-beam. The other end of the I-beam lacked an endcap. Keith Maffett had installed the pulley and hoist six years earlier for the purpose of dressing deer.[2] Charlie, while pulling Adam on the chain hoist, pulled it to the end of the I-beam that had no endcap. The pulley fell off the I-beam and onto Adam's leg, breaking his right femur. Neither Sue Maffett nor Forrest Bartlett knew that Charlie and Adam were playing with the chain hoist before the pulley fell. There was no evidence as to whether the defendants knew the endcap was missing.

On appeal, Bartlett argues that the trial court erred in granting summary judgment because genuine issues of material fact remain for jury consideration. We disagree.

"[T]he duty owed by a landowner to one who enters upon his property depends, to a certain extent, on whether the one entering the property is an invitee, a licensee or a trespasser."[3] It is undisputed that as a social guest, Adam Bartlett's legal status was that of a licensee.[4] "The owner of the premises is liable to a licensee only for willful or wanton injury."[5] It is usually wilful or wanton not to exercise ordinary care to prevent injury to a person who is known to be or may reasonably be expected to be near a hidden peril on one's premises.[6]

The duty an owner owes to a licensee arises after the owner becomes aware of or should anticipate the presence of the licensee near the peril.[7] There is no evidence in the record that Sue or Keith Maffett knew that Adam Bartlett was in the shed before he was injured. Keith Maffett was not home during the relevant time, nor did he know that Adam Bartlett and his father would visit his home on that day. When the incident occurred, Sue Maffett was inside her home. She did not know that Adam was playing in the shed.

The evidence does not support the argument that the Maffetts should have known that Adam would enter the shed. The evidence

---

[2] On one occasion, Keith Maffett used the pulley to hoist an engine from a car.
[3] *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994).
[4] *Davis v. Scott*, 232 Ga. App. 493 (502 SE2d 332) (1998).
[5] OCGA § 51-3-2 (b).
[6] *Odum v. Gibson*, 245 Ga. App. 394 (537 SE2d 801) (2000).
[7] See *Martin v. Seaboard Air Line R. Co.*, 103 Ga. App. 281, 283 (119 SE2d 56) (1961).

shows that although Adam had previously visited the Maffetts' home, he had never been in the vicinity of the barn or the shed. Finally, the record lacks evidence that the Maffetts should have anticipated that Adam would play with the chain hoist. In their affidavits, both Sue and Keith Maffett indicated that the chain hoist had never been used for play.

Appellant argues that by instructing her granddaughter to park the four-wheeler in the shed, Sue Maffett placed Adam Bartlett in the vicinity of the dangerous instrumentality, i.e., the chain hoist. To accept this argument, we would be forced to speculate that Sue Maffett knew Adam would go into the shed with her granddaughter, and that Sue Maffett knew that the children would play with the chain hoist. Such speculation and conjecture are insufficient to create an inference which would bar summary judgment in favor of the Maffetts.[8]

Appellant relies on *Murray Biscuit Co. v. Hutto*,[9] *Patterson v. Thomas*,[10] and *Barry v. Cantrell*[11] in support of his argument that an issue of fact exists as to whether the Maffetts' acts or omissions constituted wilful or wanton conduct. These cases, however, are distinguishable because in each case, the owner knew or should have known of the presence of the plaintiff near a hidden peril.

In *Hutto*, the licensee was injured while at his parent's place of employment. The owner knew that the licensee was on the premises and "[the licensee] was known, or reasonably expected to be, within range of a dangerous act being done."[12] The plaintiff in *Patterson* slipped on a rug in the defendants' home. The defendants had actual knowledge of the plaintiff's presence in their home as she was their guest.[13] Finally, in *Barry*, the plaintiff was injured while attending a birthday party for the defendants' daughter. The plaintiff sat in a hammock that was anchored to a dead tree, which fell onto the plaintiff. There was no dispute that the plaintiff's presence was known to the defendants as she was one of their guests, and that the defendants anticipated that their guests would sit on the hammock.[14] Thus, unlike the Maffetts, the owners in *Hutto*, *Patterson*, and *Barry* had actual knowledge of the licensee's presence near a hidden peril on the owner's premises.

Since the Maffetts did not know or have reason to know that Adam Bartlett would enter the shed and play with the chain hoist,

---

[8] See *Bunn v. Landers*, 230 Ga. App. 744, 745 (1) (498 SE2d 109) (1998).

[9] 115 Ga. App. 870 (156 SE2d 132) (1967).

[10] 118 Ga. App. 326 (163 SE2d 331) (1968).

[11] 150 Ga. App. 439 (258 SE2d 61) (1979).

[12] *Hutto*, 115 Ga. App. at 873 (1).

[13] *Patterson*, 118 Ga. App. at 327.

[14] *Barry*, 150 Ga. App. at 439.

they are not liable for his injuries. Had Adam Bartlett's legal status been that of a business invitee, however, a jury question would have existed as to whether the Maffetts knew or should have known that the I-beam lacked an endcap, which would have precluded summary judgment.[15] Since Adam was a mere licensee and the Maffetts' lack of knowledge of his presence in the shed was undisputed, the trial court's grant of summary judgment was appropriate.

Bartlett also contends that a jury question exists as to the theory of attractive nuisance. We disagree because the theory does not apply to this case.

> The theory of attractive nuisance arose to protect trespassing children in circumstances where their presence could be reasonably anticipated and measures to protect them could be undertaken without placing a heavy burden upon the owner's unrestricted use of his land. . . . In the taxonomy of negligence law, the attractive nuisance doctrine is but another way of saying that under given circumstances the defendant is liable for the consequences of his negligence where he should in the exercise of ordinary care have foreseen that harm would result to an infant trespasser whose presence he should have anticipated.[16]

Adam Bartlett was not a trespasser, but a licensee. Thus, there is no genuine issue of fact as to whether the defendants are liable under the theory of attractive nuisance.[17]

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED JANUARY 31, 2001.

*Wright, Hyman & Pack, Thomas H. Hyman,* for appellant.
*Gardner, Willis, Sweat & Goldsmith, Donald A. Sweat,* for appellees.

---

[15] An owner is liable in damages to invitees for injuries caused by his failure to exercise ordinary care to keep the premises safe. See OCGA § 51-3-1.

[16] (Citations and punctuation omitted.) *Gregory v. Johnson,* 249 Ga. 151, 153-154 (289 SE2d 232) (1982).

[17] We note that the attractive nuisance theory "generally has no place in a case where the circumstances show a duty on the part of a defendant to exercise ordinary care without resort to the doctrine of attractive nuisances." (Citation and punctuation omitted.) *Biggs v. Brannon Square Assoc.,* 174 Ga. App. 13, 16 (1) (329 SE2d 239) (1985).