## A04A1963. TRULOVE v. JONES.
(610 SE2d 649)

ADAMS, Judge.

Marcia Trulove fell off of a pool deck that had obviously not been completed in that the handrails had not been installed. She seriously injured one arm in the fall. She sued her friend Deborah L. Jones, the homeowner. The trial court granted summary judgment in favor of Jones, and Trulove appeals.

Construed in favor of Trulove, the evidence shows that in March 2002, Jones began installing a deck around her new, above-ground pool. As of May 23, 2002, the deck itself had been built, but the handrails had not been installed. Jones invited her friend Trulove over for a swim, and, according to Trulove, Jones said, "come over and look at the deck, come to the pool, look at the deck that I'm building, my new deck," and, "it's not finished." Trulove had been at the house for an hour before the fall, and all of that time was spent in or around the pool and on the deck. She had one glass of white wine during that time. The entire deck was visible to her, and she admitted that it was obvious that there were no railings. Other people were present including children.

At one point, Trulove was standing facing the pool, talking to Jones, who was lying on the deck right next to the pool. Behind Trulove by only a couple of steps, possibly three feet, was the edge of the deck then a drop of four to five feet to the ground. The total distance between the pool edge and the deck edge was about five or six feet. Trulove knew that there was no railing behind her. The two women had a conversation there for ten or fifteen minutes, when a young boy, unrelated to the parties, tried to get Trulove to help him push Jones into the pool. The women ignored the boy for a few minutes, then Jones said okay and rolled into the pool as the boy was trying to give her a little shove. Trulove stepped backward without looking to get out of the way and fell off the deck to the ground, badly injuring her left arm. Trulove explained her actions by saying, "when there's a couple of people doing stuff, you just kind of move out of the way" in order to play it safe. She testified that nothing prevented her from turning around and looking to see where she was stepping.

1. Trulove contends the trial court erred by concluding that Jones did not breach any duty she owed to Trulove. We disagree.

Trulove was a social guest or licensee on the premises, and as such Jones can only be liable for wilful or wanton injury. OCGA § 51-3-2; *Pope v. Workman*, 211 Ga. App. 263, 264 (439 SE2d 86) (1993). Wanton conduct has been described as " 'that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent [to do harm or inflict injury].' [Cit.]" *Muller v. English*, 221 Ga. App. 672, 676 (2) (c) (472 SE2d 448)

(1996). Moreover, an owner has no duty to a licensee to keep the premises up to any standard of safety, "except that they must not contain pitfalls, mantraps, and things of that type." (Citations, punctuation and emphasis omitted.) *Waldo v. Moore*, 241 Ga. App. 797, 798 (527 SE2d 887) (2000). "Although a landowner owes a duty to use ordinary care to protect anticipated licensees from dangerous activities being conducted on the premises or from hidden perils, where the alleged negligence arises from a dangerous static condition on the premises, the duty remains not to injure the licensee wilfully or wantonly." (Citations omitted.) *Rice v. Elliott*, 256 Ga. App. 87 (567 SE2d 721) (2002).

Trulove admitted that Jones did not intentionally hurt her and that her injury was the result of an accident. And the undisputed evidence shows that Trulove was aware that no railings were installed on the deck in the area where she was standing: she stated that it was "obvious" there was no railing and she had been in or around the pool and on the deck for an hour before she fell. "[W]here a licensee has *equal knowledge* of the dangerous condition or the risks involved, there is no wilful or wanton action on the part of the owner and there is no liability to the licensee." (Citations omitted; emphasis in original.) *Evans v. Parker*, 172 Ga. App. 416, 417 (1) (323 SE2d 276) (1984). "This is not a case where a licensee was injured by being within the range of a dangerous act being done on the premises or by coming into contact with a pitfall, mantrap, or other hidden peril on the premises." *Rice*, 256 Ga. App. at 87-88. The trial court held, and we agree, that Trulove is barred from recovery due to her equal knowledge of the obvious hazardous condition.

2. Trulove contends that the trial court erroneously concluded that Jones was not negligent per se given that evidence was presented to show that a deck without railings violated the applicable building code. But violation of a building code is irrelevant when a licensee has equal knowledge of the dangerous condition. *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392, 395 (506 SE2d 910) (1998).

3. Trulove contends that the trial court improperly rejected application of the "distraction doctrine," which provides that a plaintiff may still recover if her attention was diverted by a sudden occurrence:

> the distraction doctrine holds that "one is not bound to the same degree of care in discovering or apprehending danger in moments of stress or excitement or when the attention has been necessarily diverted. . . ." [Cits.] Application of the doctrine has the effect of excusing *an invitee* from exercising the otherwise required degree of care because of the circumstances created by the purported distraction. [Cit.]

(Emphasis supplied.) *Robinson v. Kroger Co.*, 268 Ga. 735, 744 (493 SE2d 403) (1997). Trulove claims that there is an issue of fact regarding whether she was distracted by the boy pushing Jones into the pool, and she asserts that the doctrine is applicable even if she knew of the danger.

First, we find no cases supporting the proposition that the distraction doctrine applies when the plaintiff is a mere licensee. All of the cases cited by Trulove involve invitees for whom there is a higher duty of care. See OCGA §§ 51-3-1; 51-3-2. Second, the doctrine is one that excuses an invitee from the same degree of caution ordinarily required of invitees under the circumstances. It does not affect the standard of care required of property owners to their invitees; rather it provides an exception to the property owner's standard defense that the invitee was not taking reasonable precautions:

> An invitee is charged with exercising ordinary care for personal safety and using ordinary care to avoid the effect *of the owner/occupier's negligence* after that negligence becomes apparent to the invitee or in the exercise of ordinary care the invitee should have learned of it.

(Emphasis supplied.) *Robinson*, 268 Ga. at 741.

With regard to a licensee, Jones can only be liable for wilful and wanton injury. If her conduct was not wilful or wanton she cannot be liable regardless of the degree of care that Trulove took while on the premises. Although it may be true that a distraction caused by the defendant in a case involving a licensee might rise to the level of wilful or wanton behavior, we find none here. Jones might be liable, for instance, if she instigated a game that involved running around the railing-free deck, or if she started pushing and shoving those on the deck. But her action of merely rolling into the pool at the prodding of the boy does not evince a conscious disregard of Trulove's well-being so as to be the equivalent in spirit to an actual intent to harm her. Although the trial court rejected this argument for different reasons, we will affirm summary judgment if it is right for any reason. *Fowler v. Alpharetta Family Skate Center*, 268 Ga. App. 329, 329-330 (601 SE2d 818) (2004).

4. Finally, Trulove contends that the trial court erred by concluding that certain statements made by Jones were mere benevolence rather than admissions against interest. Trulove testified during her deposition to the following:

Q: And has Ms. Jones had any discussions with you since the date of the fall about it being her fault or how it happened or why it happened?

A: Oh, yeah, she felt terrible about it. She still feels real bad about it.

Q: Has Ms. Jones ever said to you, it's totally my fault or anything of that nature?

A: Not those words. I think more or less, you know, she just feels guilty about it, and she's, you know, apologized about it.

Jones testified as follows during her deposition:

Q: Have you ever apologized to Marcia for the accident occurring?

A: Yes.

Q: Do you remember what you have said to her?

A: That I'm sorry.

Q: Why do you feel the need to apologize to her?

A: Because I felt like I should have waited to invite people over because my deck wasn't completed and it was not safe.

Q: Other than apologizing to Marcia, have you even admitted to Marcia that the accident was your fault?

A: I believe I have.

Q: Do you know what you would have said to her?

A: I think I said something along the lines of I'm really sorry it happened, I feel like it's my fault that you fell off of the deck, and I shouldn't have invited people over without it being completed.

Q: Have you ever admitted to anyone else other than Marcia that you think the accident was your fault?

A: Yes.

Q: Who else would you have told this to?

A: Probably everybody that was standing around at the hospital. Just friends. Friends and conversation after the accident happened.

Q: As we sit here today, do you still feel that the accident was your fault?

A: Yes. . . . Yes, to a degree.

The trial court held as a matter of law that Jones's statements did not constitute admissions of liability because they were merely expressions of benevolence or sympathy, and, as such, they did not create questions of fact that would preclude summary judgment. We agree because without a basis for legal liability, such a statement is legally immaterial:

An admission of liability has efficacy only if there is liability. If there is none, then the statements of the alleged tortfeasor constitute merely expressions of sympathy, benevolence, or an acceptance of *moral* responsibility.

(Citation and punctuation omitted; emphasis in original.) *Widner v. Brookins, Inc.*, 236 Ga. App. 563, 565 (3) (512 SE2d 405) (1999). See, e.g., *Steverson v. Eason*, 194 Ga. App. 273, 273-274 (3) (390 SE2d 424) (1990) (statement by defendant that he felt responsible for plaintiff's husband's death was not an admission of liability).

As shown above, without wilful or wanton conduct Jones could not be liable. Her statements that she felt like she was at fault cannot change this result. Distinguishable are cases in which the facts could support liability and the defendant's inculpatory statement could constitute an admission of certain facts that would establish liability. See, e.g., *Harris v. Hardman*, 133 Ga. App. 941 (212 SE2d 883) (1975) (grandmother's admission of fault admissible when facts suggested that she may have negligently allowed child to run into harm's way); *Elder v. Smith*, 121 Ga. App. 461 (174 SE2d 239) (1970) (defendant's admission against interest admissible when he knew of danger but may have failed to warn plaintiff).

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED FEBRUARY 17, 2005.

*Mason, Harris & Bahr, William P. Mason, Brian J. Harris*, for appellant.
*Downey & Cleveland, Rodney S. Shockley*, for appellee.

