A08A1684. JARRELL et al. v. JDC & ASSOCIATES, LLC et al.

(675 SE2d 278)

MIKELL, Judge.

Richard G. and Deborah Jarrell filed a personal injury action against related entities, JDC & Associates, LLC ("JDC") and Jolly Development Corporation ("Jolly"), after Richard Jarrell was injured when he fell on property owned by the appellees. JDC and Jolly filed a motion for summary judgment, arguing that as a matter of law, they were entitled to judgment in their favor on the Jarrells' negligence claim because there was no evidence of wilful or wanton acts by JDC. The trial court agreed, concluding that Richard Jarrell was a licensee on the premises; that JDC and Jolly did not breach the duty owed to him in his capacity as a licensee; that there was no competent evidence of wilful or wanton conduct on the part of JDC and Jolly; and that there was no evidence that Jarrell's fall was caused by a mantrap or pitfall on the premises. We affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.[1]

---

[1] (Citation omitted; emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed most favorably to the Jarrells, the evidence shows that on October 23, 2003, Jarrell, who had returned to work at BellSouth Technologies approximately one week earlier after having lower back surgery, was directed to Spalding Gate Development to perform an audit of work previously completed by vendors hired by BellSouth. Those vendors were paid to mark and identify buried telephone utility cables on the residential property construction site. Jarrell was accompanied by another BellSouth employee, whom Jarrell was training on the day in question.

According to Jarrell, when they arrived at the property, they walked along the front of the property on pavement, then left the pavement, walking on wheat straw, to go around the back of the building. When asked if the wheat grass was level, Jarrell replied, "[i]t was as level . . . as you could possibly get for what construction people call a rough grade," then agreed that the wheat straw was fairly flat. As Jarrell walked around the building, he noticed that some spots of wheat straw were unusually thick, but he continued to walk through it. Jarrell testified that he stepped into a hole that he opined was concealed by wheat straw. Jarrell did not move the wheat straw to determine the size of the hole nor did he report his injury to anyone on the job site. Jarrell left the job site, without having completed the assignment, and reported the incident to BellSouth.

On cross-examination, Jarrell acknowledged that wheat straw is typically used on construction sites for erosion control; that digging occurs when utility cables are located and that as a standard practice in his job, he keeps a lookout for holes on construction sites; that he was aware that there were more risks on a construction site as opposed to a completed development; that he had encountered wheat straw on hundreds of jobs as a BellSouth employee; and that approximately four inches of wheat straw covered the hole where he fell. Jarrell testified that he did not know whether the hole was man-made or naturally occurring but thought that it was man-made even though he acknowledged that he had no evidence that it was.

In two related enumerations of error, Jarrell argues that the trial court erred when it determined that he was a licensee on the premises, rather than an invitee, and in its finding that appellees did not breach its duty to Jarrell. Further, Jarrell contends that even if he were a licensee, appellees' failure to inspect the premises and prevent injury was wanton and wilful and renders them liable. We disagree and affirm the trial court's judgment.

An invitee is a person who, "by express or implied invitation, has been induced or led to come upon premises for any lawful pur-pose . . . [while] [a] licensee . . . is one who is permitted, either

expressly or impliedly, to go on the premises of another, but merely for his own interest, convenience, or gratification."[2] Accordingly, the duty owed to an invitee is greater than that owed to a licensee. An owner owes a duty to an invitee to exercise ordinary care to keep the premises and approaches safe[3] while his duty to a licensee is not to injure the licensee wantonly or wilfully[4] and "arises after the owner becomes aware of or should anticipate the presence of the licensee near the peril."[5]

> The accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had *present business relations with the owner or occupier which would render his presence of mutual benefit to both*, or whether his presence was for his own convenience, or was for business with one other than the owner or occupier.[6]

In the instant case, Jarrell may be considered, at best, a licensee as there was no evidence that the property owner even knew that he was on the property.[7] Jarrell was on the site to audit work that had already been performed by BellSouth's vendor and was training another BellSouth employee. Therefore, the purpose of Jarrell's visit was connected to BellSouth's business with its vendors, not business with the landowner, which confers upon Jarrell the status of licensee rather than invitee.[8]

Jarrell cites *Clark Atlanta Univ. v. Williams*[9] and *Hall v. Capps*[10] for the proposition that he was a business invitee. However, *Clark* is inapposite here as the issue in that case was whether a student at the Atlanta University Center, who was an invitee,[11] had lost this status at some point before he was shot.[12] *Hall* does not support Jarrell's argument either. In that case, the issue was whether a social visitor,

---

[2] (Footnotes omitted.) *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 634 (658 SE2d 137) (2008).

[3] See OCGA § 51-3-1.

[4] See OCGA § 51-3-2 (b).

[5] (Footnote omitted.) *Bartlett v. Maffett*, 247 Ga. App. 749, 750 (545 SE2d 329) (2001).

[6] (Citation omitted; emphasis supplied.) *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1) (a) (522 SE2d 739) (1999).

[7] See *Matlack*, supra; *Bartlett*, supra.

[8] *Moore-Sapp Investors*, supra.

[9] 288 Ga. App. 180 (654 SE2d 402) (2007).

[10] 52 Ga. App. 150 (182 SE 625) (1935).

[11] *Niles v. Bd. of Regents &c.*, 222 Ga. App. 59, 60 (1) (473 SE2d 173) (1996) (students are considered invitees).

[12] *Clark*, supra at 181 (1).

who was injured while on the occupant's premises, was an invitee or a licensee, and we held that the visitor was a licensee.[13] As stated earlier, an invitee is one induced or led, by express or implied invitation from an owner or occupier of the land, to come upon the premises for a lawful purpose.[14] Jarrell offers no evidence that JDC and Jolly invited BellSouth to the property to conduct the audit of the work performed by its vendors.

William Standish, appellees' project manager, deposed that on the date of the accident, he was not informed that BellSouth was sending someone out to verify that utility cables had been located; that he was not informed that anyone was injured on the property; and that he was not informed that BellSouth came to the site to investigate the injury or ever contacted by BellSouth about the incident. Jarrell has offered no evidence to the contrary. Accordingly, because no evidence was offered that Jarrell was induced or led to come upon the property for a business purpose that benefitted JDC and Jolly, we agree with the trial court's conclusion that Jarrell was a licensee.

In addition, the trial court correctly concluded that JDC and Jolly did not breach the duty it owed to Jarrell as a licensee. As a licensee, Jarrell

> must show that the defendant wilfully and wantonly injured him. As it is said: An owner owes to a licensee no duty as to the condition of the premises save that he should not knowingly let him run upon a hidden peril or wilfully cause him harm. To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, man-traps, and things of that character.[15]

The doctrine of mantrap or pitfall rests upon the theory that the owner expects a licensee or trespasser and has prepared the premises to cause that person harm.[16] Here, there was no evidence that JDC and Jolly wilfully and wantonly injured Jarrell or that they created a mantrap or pitfall such that they would be liable for Jarrell's injuries.[17] Standish testified that he walked the property daily; that safe practice requires that the property owner provide some notice of

---

[13] *Hall*, supra at 151-152.

[14] See OCGA § 51-3-1.

[15] (Citations and punctuation omitted.) *Francis v. Haygood Contracting*, 199 Ga. App. 74, 75 (1) (404 SE2d 136) (1991).

[16] Id.

[17] See generally *Clark v. Rich's, Inc.*, 114 Ga. App. 242, 243 (3) (150 SE2d 716) (1966) (no

holes large enough for a person to become submerged if they were to fall into the hole; and that around the time of the accident, he did not see a hole or trench that was so noticeable that it should have been marked. We note, too, that the rule that imposes liability for harm caused to licensees "presupposes that the licensees do not know or have reason to know of the risks involved."[18] Here, there is evidence that Jarrell knew of the risks involved. He testified that he had been to hundreds of construction sites that used wheat straw as an erosion control measure and that he knew that digging was required to locate utility cables.

Since we agree with the trial court's conclusion that Jarrell was a licensee, and the duty owed to a licensee does not include the duty to exercise ordinary care to keep the premises and approaches safe, Jarrell's remaining argument that appellees' failure to inspect the premises constituted wilful and wanton conduct fails as well.[19]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 10, 2009.

*Savell & Williams, Jennifer H. Chapin*, for appellants.
*Hollowell, Foster & Gepp, LaShawn W. Terry, Adam H. Long, Veronica H. Cope*, for appellees.

---

liability where there is no evidence that owner wantonly or wilfully injured licensee or created a pitfall or mantrap).

[18] *Wren v. Harrison*, 165 Ga. App. 847, 849 (303 SE2d 67) (1983).

[19] See *Mut. Life Ins. Co. v. Churchwell*, 221 Ga. App. 312, 314 (2) (471 SE2d 267) (1996) (owner does not owe licensee a duty to inspect the premises to discover dangerous conditions of which the owner did not yet have actual knowledge and "where a licensee has equal knowledge of the dangerous condition or the risks involved, there is no wilful or wanton action on the part of the respective premise owner, manager, or tenant, and there is no liability to the licensee") (citation and emphasis omitted).