**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0668. SCULLY v. THE BOARD OF REGENTS OF THE
    UNIVERSITY SYSTEM OF GEORGIA et al.

MILLER, Judge.

Following a night of drinking, David Clark Scully suffered serious injuries on
the University of Georgia campus after he tripped on an irrigation pipe set in a
landscaped area and fell into a window well. Scully sued the Board of Regents of the
University System of Georgia ("the Board") for premises liability and negligent
maintenance.[1] The trial court granted summary judgment to the Board, and Scully
appeals. Scully contends, inter alia, that the trial court erred in finding that (1) he was

---

[1] Scully filed suit against both the Board and the University of Georgia. The
Board "is a state agency that governs and manages the University System of Georgia
and its member institutions[.]" *Bd. of Regents of the Univ. System of Ga. v. Doe*, 278
Ga. App. 878 (630 SE2d 85) (2006). State universities are not separate and distinct
legal entities from the Board and, therefore, the University of Georgia cannot sue or
be sued in its own capacity. See id.

a licensee and not an invitee, and (2) the Board met the standard of care due to licensees. For the reasons that follow, we affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Home Builders Assn. of Savannah, Inc. v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). On appeal from a grant of a motion for summary judgment, we conduct a de novo review of the evidence. See id. While issues of negligence are not generally susceptible to summary adjudication, "[t]he trial court can conclude as a matter of law that the facts do . . . not show negligence on the part of the defendant . . . where the evidence is plain, palpable and undisputable." (Citation omitted.) *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997).

Viewed in the light most favorable to Scully, the evidence shows that on Friday, October 2, 2009, Scully and five friends drove to Athens to visit Matthew Christopher. Christopher was a freshman attending the University of Georgia and

2

living in Creswell Hall, a university dormitory.[2] Scully was an 18-year-old freshman at the Georgia Institute of Technology and this was his first visit to the University of Georgia campus.

Around 10:30 p.m., Scully and his friends arrived in Athens and went to Creswell Hall to drop off their things. There, Scully consumed rum shots. Scully then went to several fraternity parties before taking a taxi to downtown Athens and going to a few bars. Scully drank a couple of beers at the fraternity parties and then had two beers and some pizza in downtown Athens.

After the bars closed at approximately 2:00 a.m., Scully, Christopher and their friends began walking back through the university campus to Creswell Hall.[3] They reached Park Hall and Christopher led the group down the sidewalk behind Park Hall, on the north side of the building. Creswell Hall could also have been reached by crossing in front of Park Hall, which fronted Baldwin Street. Scully and Christopher both observed that the front of Park Hall was well-lit. They also noticed that one of

---

[2] University of Georgia students are not restricted from having guests on the campus.

[3] Christopher deposed that he could not remember if the group was heading to Creswell Hall or to his fraternity house, but stated that there would not have been room for everyone to stay in his dorm room.

the street lamps next to the sidewalk behind Park Hall was not working and the area behind Park Hall was dark.

Along the north side of Park Hall, the sidewalk is approximately nine feet wide and straight, with a concrete retaining wall on one side and an approximately six-foot-wide landscaped area between the sidewalk and the window wells adjacent to Park Hall. The landscaped area, which included pine straw and shrubbery, was not intended to be a walkway. In the landscaped area, there was a flexible irrigation pipe, which was stapled in place and covered with mulch.

As he walked behind Park Hall, Scully lagged behind his friends and began jogging to catch up with them. Scully stepped off the sidewalk and tripped on something "like a rope," which he believed was part of the irrigation system. Scully fell into a window well, which was approximately eight feet deep. Scully was knocked unconscious and was unresponsive. He was transported to the hospital, where he remained for the next six days. Scully suffered a skull fracture and damage to his right frontal lobe.

Shortly after the fall, at around 5:00 a.m., Scully's blood alcohol level was measured at .243.[4] Scully deposed that he had "a buzz" at the time he fell and did not intend to stray from the sidewalk, however, he was looking ahead to see where his friends were and was not really paying attention to where the sidewalk ended. He also stated that it was too dark for him to see where the sidewalk ended and the landscaped area began.

1. Scully contends that at the time of the accident, he was an invitee on the University of Georgia campus because he was a guest of Christopher, who was a tenant of the Board. We disagree.

Scully's status as either an invitee or a licensee determines the duty of care that the Board owed to him. See *Ga. Dept. of Corrections v. Couch*, 312 Ga. App. 544, 546 (1) (a) (718 SE2d 875) (2011).

> An invitee is someone whom a landowner, by express or implied invitation, induces or leads to come upon his premises for any lawful purpose. A licensee, on the other hand, is a person who is neither a customer, a servant, nor a trespasser, who does not stand in any

---

[4] A board-certified psychiatric pharmacist deposed that a blood alcohol level of .243 is consistent with consuming an estimated 16 to 17 alcoholic drinks and can cause poor judgment, poor coordination, poor eyesight, disinhibition and slowed cognition. Such a high blood alcohol level can also affect a person's ability to walk.

> contractual relation with the landowner, and who is permitted to go on the premises merely for [his] own interests, convenience, or gratification.

(Footnote omitted.) Id. See also OCGA § 51-3-1.

> The generally accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or was for business with one other than the owner or occupier.

(Punctuation and footnote omitted.) *Couch*, supra, 312 Ga. App. at 546 (1) (a).

Here, Scully offers no evidence that the Board induced him to come upon the campus for the Board's benefit. It is undisputed that Scully had no present business relationship with the University of Georgia and that he went to the campus to visit a friend. Therefore, his presence on the campus in the middle of the night was of no mutual benefit to him and the Board.

Scully, however, relies on this Court's holding in *Paul v. Sharpe*, 181 Ga. App. 443, 444 (1) (352 SE2d 626) (1987) and argues that he enjoyed the status of an invitee because he was visiting Christopher, a tenant of Creswell Hall. A guest of a tenant is an invitee as to the tenant's landlord. See *Silman v. Associates Bellemeade*,

6

294 Ga. App. 764 (2) (669 SE2d 663) (2008); *Paul*, supra, 181 Ga. App. at 444 (1) (tenant's guests "stand in his shoes" as to the right of recovery in premises liability cases).[5]

Christopher, however, was a resident of Creswell Hall, not Park Hall, where Scully was injured. The trial court noted that, under *Paul*, if Scully had been injured while visiting Creswell Hall, he would be entitled to invitee status. Park Hall, however, was several blocks from Creswell Hall, and Scully did not have to walk behind Park Hall to get to Creswell Hall; there was a well-lit public street in front of Park Hall that also led to Creswell Hall. Accordingly, the tenant exception applicable in *Paul* does not apply in this case. Compare *Paul*, supra, 181 Ga. App. at 444-445 (1) (child visiting an apartment complex was an invitee when injured on a bridge that was one of two means of ingress to the apartment complex).

As this Court noted in *Paul*, under the tenant exception,

> [t]he invitee may not wander at will without further invitation to out-of-the-way and dangerous places on the premises; neither may he use parts of the premises for purposes wholly disconnected from and in no way pertaining to the business in hand or the objects of the invitation.

---

[5] Compare *Brown v. Clay*, 166 Ga. App. 694, 695-696 (305 SE2d 367) (1983) (finding that guest of tenant visiting for the guest's benefit is a licensee).

7

(Citation and punctuation omitted.) *Paul*, supra, 181 Ga. App. at 445 (1). Here, the area behind Park Hall was wholly disconnected from Scully's visit to Creswell Hall.

Scully argues, in the alternative, that guests of university residents should be deemed invitees of the entire university premises. As a student of the University of Georgia, Christopher was an invitee of the Board throughout the campus. See *Clark Atlanta Univ., Inc. v. Williams*, 288 Ga. App. 180, 181 (1) (654 SE2d 402) (2007). As a person with no contractual relationship with the University of Georgia, however, Scully was on the campus generally as a licensee of the Board. See OCGA § 51-3-2. To accept Scully's arguments would transform anyone who visits a university student into an invitee for the entirety of their stay on campus, no matter where they venture and for what reason, which is inconsistent with the statutory distinction between invitees and licensees. Accordingly, the trial court correctly concluded that, as a matter of law, Scully was a licensee of the Board when he was injured outside of Park Hall.

2. Scully contends that even if he was a licensee, the trial court erred in finding that the Board did not violate its duty of care to him. Specifically, he argues that the combination of the streetlight being out and the irrigation pipe next to the window

8

well with no surrounding barrier constituted a hazard, for which the Board was liable. We disagree.

"The standard for determining what duty an owner has to a licensee varies depending on the type of condition that exists on the land." *Aldredge v. Symbas*, 248 Ga. App. 578, 580 (547 SE2d 295) (2001). The irrigation pipe placed in the landscaped area near the window well was not a mantrap or pitfall,[6] but a static condition, and a landowner's only duty as to a licensee regarding static conditions is to avoid wilful or wanton injury. See id. at 581; see also *Jones v. Murphy*, 306 Ga. App. 539, 540 (703 SE2d 26) (2010); OCGA § 51-3-2. "Wanton conduct has been described as that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent to do harm or inflict injury." (Citation and punctuation omitted.) *Trulove v. Jones*, 271 Ga. App. 681 (1) (610 SE2d 649) (2005).

---

[6] The trial court correctly rejected Scully's argument below that the window well constituted a hazard or a mantrap. Mantraps are deliberately set traps or perils hidden by the owner with the intent to cause injury. See *Aldredge*, supra, 248 Ga. App. at 580. Here, there is no evidence that the window well was intended to cause injury. Moreover, the window well was six feet away from the sidewalk and, thus, was not close enough to the traveled path to pose a danger to those who accidentally stepped off the path. See *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 800 (1) (a) (522 SE2d 739) (1999) (hole nine-and-a-half feet from paved path was not a mantrap).

Here, there is simply no evidence that the Board acted wilfully or wantonly to injure Scully or anyone else. There was a six-foot landscaped area between the sidewalk and the window well and the irrigation pipe was placed in the landscaped area, which was not intended to be a walkway. See *Aldredge*, supra, 248 Ga. App. at 581 (finding no wilfulness or wantonness even though drainage ditch was obscured by shrubbery because area was not intended to be walked upon).

Moreover, the undisputed facts, even viewed in the light most favorable to Scully, show that the Board was diligent in maintaining the lighting in the area behind Park Hall. Specifically, although a street light was out at the time of Scully's fall, the evidence in the record shows that the light had likely only been out for a short time. The maintenance department conducted regular lighting surveys on campus, every four to six weeks, and typically repaired or replaced lights that were out within one to two weeks.[7] The maintenance department conducted a lighting survey on September 17, 2009, a little over two weeks before Scully fell.

---

[7] Maintenance workers tagged any lights that were out and the lights would remain tagged until repaired.

Absent any evidence that the Board wilfully or wantonly injured Scully, the Board was entitled to summary judgment as a matter of law.[8]

*Judgment affirmed. Andrews, P. J., and Branch, J., concur.*

---

[8] Since we affirm the trial court's ruling that the Board breached no duty to Scully, we need not consider Scully's remaining contentions regarding causation and assumption of the risk.