**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 23, 2018**

# In the Court of Appeals of Georgia

A18A1227. MANNERS v. 5 STAR LODGE AND STABLES, LLC
      et al.

MCFADDEN, Presiding Judge.

Caitlin Manners filed this lawsuit to recover damages for the injuries she sustained when she was accidentally shot by Joey Sisson at 5 Star Lodge and Stables, LLC. She asserted claims of premises liability under OCGA § 51-3-1 and respondeat superior under OCGA § 51-2-2 against 5 Star and its owner, William Kenneth Butler, Jr.; and she asserted a claim of negligence under OCGA § 51-1-2 against Sisson.

Manners appeals the grant of summary judgment to 5 Star and owner Butler. She argues that the shooting occurred in the course and scope of Sisson's employment, so 5 Star and Butler are liable for the shooting. She also argues that whether she was on the premises as an invitee or as a licensee is a jury question,

precluding summary judgment. But it is undisputed that at the time of the injury, the crucial point for purposes of Manners' lawsuit, Sisson was not acting in the course of any employment and Manners was a licensee. So we affirm.

1. *Factual background.*

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *New Madison South Limited Partnership v. Gardner*, 231 Ga. App. 730, 731-732 (499 SE2d 133) (1998) (citation and punctuation omitted).

So viewed, the record shows that 5 Star is a lodge and horse-boarding facility that hosts weddings, corporate retreats, and family reunions. After he purchased 5 Star, Butler hired Roxanne Young to manage the lodge and stables, to manage the boarding of horses, and to start leading trail rides. Young and Sisson, her boyfriend, lived in an apartment on the property. Manners and her boyfriend, Keri Wilson, were friends with Young and Sisson, whom they had met at a wedding years before the shooting.

On the evening of the shooting, a Friday, Manners and Wilson went to 5 Star to visit Young and Sisson. Manners and Wilson found Young and Sisson in the barn. Manners and Young began looking at real estate listings on the computer, while Sisson showed Wilson a modification he had made to his pistol. Within minutes, Sisson accidentally shot Manners. At the time of the shooting, Sisson was not doing anything related to work at 5 Star. Nor were Manners or Wilson doing anything related to work at 5 Star when Manners was shot; they were there for a social visit.

Dorothy Hunt, a friend of Young's, was also in the barn at the time of the shooting. She was at 5 Star to take care of the horses during the weekend because Young would be busy with weddings on Saturday and Sunday. Hunt testified that Young had told her that Manners and Wilson were going to help park cars for the weddings as they had done before, although Hunt did not speak with Manners or Wilson about that prospective assignment. There is no evidence that, at the time of the shooting, Manners was engaged in any business at 5 Star, and she testified that she had no plans to return to the property later that weekend to work or for any other reason.

2. *Respondeat superior*.

Manners argues that the trial court erred in granting summary judgment on her respondeat superior claim because a jury could find that Sisson was 5 Star's employee and that the shooting occurred while he was engaged in 5 Star's business. Assuming for purposes of this appeal only that Sisson was 5 Star's employee, there is no evidence that the shooting occurred while Sisson was engaged in 5 Star's business. So the trial court did not err by granting 5 Star and Butler's motion for summary judgment on this claim.

"Every person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." OCGA § 51-2-2. "When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was *at the time of the injury* acting within the scope of his employment and on the business of the master." *Hicks v. Heard*, 286 Ga. 864, 865 (692 SE2d 360) (2010) (citation omitted; emphasis added).

Manners argues that Dorothy Hunt's testimony that Manners and Wilson, her boyfriend, were at the premises to help with the weddings — even though Manners and Wilson did not know that — is evidence that "the gathering [in the barn] before the shooting was at least in part a 5 Star business meeting where Young and Sisson

4

were going to talk about how [Manners] and [Wilson] were going to help with the two weddings at the premises," but that Manners was shot before they were able to begin that discussion. So, Manners argues, a jury could find that the shooting occurred while Sisson was engaged in his employer's business.

The evidence is undisputed, however, that whatever the plans may have been for later that weekend, they were not discussing work *at the time of the shooting*. So there is no evidence that Sisson was engaged in 5 Star's business at the time he accidentally shot Manners. The trial court properly granted summary judgment on the respondeat superior claim.

3. *Premises liability*.

Manners argues that the trial court erred in granting summary judgment on her premises liability claim because some evidence would allow a jury to find that Manners was on the premises to work and was therefore an invitee, and that 5 Star and Butler breached the duty to exercise ordinary care to keep Manners safe. We disagree.

"The elements of legal liability of the owner of premises for injuries occasioned to persons thereon vary according to whether the person injured was, *at the time of the injury*, a trespasser, a licensee, an invitee express or implied, or a person standing

in some special relation recognized by law." *Cook v. Southern R. Co.*, 53 Ga. App. 723, 724-25 (1) (187 SE 274) (1936) (emphasis added). A landowner owes the duty of ordinary care to an invitee. OCGA § 51-3-1; *Jarrell v. JDC & Assoc., LLC*, 296 Ga. App. 523, 525 (675 SE2d 278) (2009). A landowner owes a lesser duty — to avoid causing willful or wanton injury — to a licensee. OCGA § 51-3-2 (b); *Jarrell*, 296 Ga. App. at 525. "To determine whether a person is an invitee or a mere licensee, the nature of his relation or contact with the owner or occupier of the premises must be determined . . . *at the time of the injury*. . . ." *Armstrong v. Sundance Entertainment*, 179 Ga. App. 635 (347 SE2d 292) (1986) (citation and punctuation omitted; emphasis in original).

As detailed above, whatever the plans may have been for later that weekend, it is undisputed that at the time of the injury, when Sisson accidentally shot Manners, Manners was engaging in a social visit. Under Georgia law, social guests are licensees, not invitees. *Thompson v. Oursler*, 318 Ga. App. 377, 378 (733 SE2d 359) (2012). So at the time of the injury, 5 Star and Butler only owed Manners the duty not to injure her wantonly or willfully.

Wanton conduct is conduct that "is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent to do harm or

6

inflict injury. Moreover, an owner has no duty to a licensee to keep the premises up to any standard of safety, except that they must not contain pitfalls, mantraps, and things of that type." *Trulove v. Jones*, 271 Ga. App. 681, 681-682 (1) (610 SE2d 649) (2005) (citations and punctuation omitted).

> [I]t is also usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be or may reasonably be expected to be, within range of a dangerous act being done or a hidden peril on one's premises. In other words, a possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved.

*Thompson v. Oursler*, 318 Ga. App. 377, 378 (733 SE2d 359) (2012) (citations and punctuation omitted). "Where a licensee has *equal knowledge* of the dangerous condition or the risks involved, there is no wilful or wanton action on the part of the owner and there is no liability to the licensee." *Trulove*, 271 Ga. App. at 682 (1) (citation and punctuation omitted; emphasis in original).

It is undisputed that the shooting was an accident. To the extent that Manners argues on appeal that 5 Star and Butler through Young unjustifiably placed Manners at risk given Young's knowledge that Sisson had been drinking and was handling a gun, it is also undisputed that Manners knew these facts. (She points to no evidence that Sisson was intoxicated or that any intoxication had anything to do with the accident.) Manners "admitted that [Sisson] did not intentionally hurt her and that her injury was the result of an accident. And the undisputed evidence shows that [she] was aware [of the facts that she now contends unreasonably placed her at risk]." *Trulove*, 271 Ga. App. at 682 (1). Accordingly, the trial court properly granted summary judgment on the premises liability claim.

*Judgment affirmed. Ray and Rickman, JJ., concur*.