**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 8, 2019**

# In the Court of Appeals of Georgia

A19A1053. SCOTT et al. v. FOREST ACRES FULL GOSPEL CHURCH et al.

MARKLE, Judge.

Jerry Scott was severely injured when he fell through a skylight in a building he was helping Forest Acres Full Gospel Church ("the Church") dismantle after the Church purchased it from the Hospital Authority of Colquitt County ("the Hospital"). Scott and his wife (collectively "the Scotts") sued the Church and the Hospital for negligence, vicarious liability, and loss of consortium, along with punitive damages and attorney fees. The trial court granted the Church's and the Hospital's motions for summary judgment, on the ground that Scott had equal knowledge of the danger when

he went onto the roof.[1] The Scotts now appeal. After a thorough review of the record, and for the reasons that follow, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." OCGA § 9-11-56 (c). Our review of a trial court's ruling on a motion for summary judgment is de novo, and we review the evidence, and all reasonable inferences, in the light most favorable to the nonmovant. See *Green v. Raw Deal, Inc.*, 290 Ga. App. 464, 465 (659 SE2d 856) (2008).

So viewed, the record shows that the Butler Building ("the building") on the Hospital's property was a metal building constructed some time before 1981. The Hospital used the building for storage, and it was the only building on the property that had skylights. The skylights were fiberglass and were not load-bearing. The maintenance staff never cleaned or pressure washed the roof of the building, and there were no guards around the skylights.

---

[1] Scott and his wife also initially named as defendants Colquitt Regional Medical, Inc. and Colquitt Regional Health, Inc. The trial court granted Regional Medical's consent motion for summary judgment and the Scotts' and Regional Health's joint motion to dismiss, thus they are not part of this appeal.

In August 2014, the Hospital decided to sell the building to the highest bidder. It solicited bids by e-mail, explaining that: "The sale will require you to tear down and remove the building . . . . [R]emoval must be completed by September 26." The Hospital did not consider the sale completed until the removal occurred. The Church was the highest bidder, paying around $3,300.

In preparation for the removal of the building, Church member Chris Collier arranged to borrow a forklift from Scott. A week before the deadline, the Church began removal of the building. When Scott arrived with the forklift that morning, he realized that the Church was unprepared to disassemble the building; it did not have a plan or enough people on site to do the work. Although no one from the Church asked him to help, Scott volunteered because he had seen similar projects done in the past and had worked with his contractor to rebuild a shed at his home.

Scott used that knowledge to help the Church remove the building. Scott and other members of the Church walked around the building on ground level and noticed there were skylights in the roof. Scott heard someone mention that they would need to be careful on the roof because of those skylights. Then, based on Scott's advice, the workers removed the trim off the building, the garage door, the walk-in door, and

the front of the building before heading up to the roof. Once on the roof, they would remove the ridge cap and then take off the sheet metal and skylights.

After the Church's pastor stated he would go on the roof to remove screws, Scott volunteered to go onto the roof with Church member Chris Nix, and he suggested that the pastor work the forklift. Scott and Nix discussed how far the skylights were from the edge of the roof, and the placement of the ridge cap running through the skylights, and they knew that removing the ridge cap would involve working where the skylights were located.

Without using safety harnesses or hard hats, the men used the forklift to raise themselves to the top of the roof and then began walking along the ridge cap to remove the screws. The roof was dirty and weathered, and it appeared all the same color to Scott; none of the skylights were marked or visible.[2] In addition, the skylights were flush against the roof and matched the same pattern as the rest of the material.

---

[2] There was conflicting evidence in the record. Church member Dick Miller testified that Scott warned others of the skylights before they went on the roof. And Nix testified that the skylights were visible when they walked out onto the roof because they were a different color and material than the rest of the roof. Consistent with our standard of review, we consider the evidence in the light most favorable to the Scotts.

Scott did not expect the skylights to run all the way up the roof to the ridge cap, and he was paying attention to the screws as he walked. He and Nix removed the first section of the ridge cap and, as they started on the next section, Scott took several steps to the side. Nix yelled for Scott to look out for the skylight, but Scott fell through a skylight onto the concrete floor of the building, suffering severe injuries.

The Scotts sued the Church and the Hospital in tort. Following discovery, both defendants moved for summary judgment, arguing that they owed no duty to Scott because he was a licensee, and that even if they owed a duty, Scott had equal knowledge of the danger and failed to exercise ordinary care for his own safety, and that he assumed the risk of injury.

The trial court granted summary judgment to the Church and the Hospital, finding that Scott had equal knowledge of the risk because he knew the skylights were on the roof and that he failed to exercise ordinary care for his own safety.[3] The Scotts now appeal.

---

[3] Based on questions the trial court asked during oral argument on the summary judgment motions, the defendants later filed supplemental motions for summary judgment, each arguing that the other entity was the owner of the building. In light of our conclusion that Scott had equal knowledge, it is irrelevant which entity owned the building.

In related enumerations of error, the Scotts argue that summary judgment was improper because (1) Scott was an invitee of both the Church and the Hospital; (2) as an invitee, the Hospital owed him a duty to exercise ordinary care to make the roof safe; (3) there remain factual questions regarding his knowledge of the skylights and his assumption of the risk that make summary judgment improper; and (4) the Hospital retained ownership of the building because it had not relinquished full possession of it. We disagree.

Before turning to the Scotts' specific arguments, we first set out the applicable law.

> In a cause of action for negligence, [the plaintiff] bears the burden of establishing four essential elements: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. The legal duty of care owed by a landowner to a person coming upon the property varies and is fixed according to the legal status of the person entering the premises. A landowner owes the highest duty—the duty of ordinary care—to an invitee. A landowner owes a lesser duty—to avoid causing wilful or wanton injury—to a licensee.

(Citations and punctuation omitted.) *Freeman v. Eichholz*, 308 Ga. App. 18, 20 (1) (705 SE2d 919) (2011) (physical precedent only as to Div. 1); see also *Garcia v. KRC Alderwood Trails, LLC*, 348 Ga. App. 84, 88 (819 SE2d 713) (2018); OCGA § 51-3-1. Importantly, equal knowledge of the dangerous condition or the risks involved will preclude recovery regardless of whether the plaintiff is an invitee or licensee. *Manners v. 5 Star Lodge and Stables*, 347 Ga. App. 738, 741 (3) (820 SE2d 754) (2018); *Perkins v. Kranz*, 316 Ga. App. 171, 172 (1) (728 SE2d 804) (2012). With these standards in mind, we turn to the arguments on appeal.

1. The Scotts argue that the trial court erred in concluding that Scott had equal knowledge of the danger and failed to exercise ordinary care, and that he assumed the risk because these issues are questions for the jury. He further argues that he did not assume the risk because he did not have specific knowledge of the danger that caused his injury. We conclude that Scott had equal knowledge of the danger as a matter of law.

"The crux of a premises liability case is the owner's *superior* knowledge of the hazard; thus, a plaintiff's actual, subjective awareness of the hazard precludes a recovery under this theory." (Citation omitted; emphasis supplied.) *Saunders v. Indus. Metals & Surplus, Inc.*, 285 Ga. App. 415, 419 (3) (646 SE2d 294) (2007); see also

7

OCGA § 51-11-7 ("If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover.").

In addressing the Scotts' enumerations of error, we are mindful that our standard of review requires us to view the evidence and make all reasonable inferences in the light most favorable to them. *Green*, 290 Ga. App. at 465. Additionally, although questions regarding a plaintiff's equal knowledge and lack of ordinary care are usually questions for the jury, summary judgment is proper in "plain, palpable, and undisputed cases." (Citation and punctuation omitted.) *Garcia*, 348 Ga. App. at 87-88; see also *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997) (summary judgment proper in plain and palpable cases). On this record, we conclude that this is one of those plain, palpable, and indisputable cases, and therefore, the trial court properly determined that Scott had equal knowledge of the risk and failed to exercise ordinary care.

Here, Scott has failed to show that there is a genuine issue of material fact. Scott admitted that he knew the skylights were on the roof, that they were unguarded, and that it was dangerous to fall from a skylight. He further admitted that once he was on the roof he could not tell where the skylights were. A person of ordinary prudence

8

in this situation would simply not undertake to walk out on the roof under these circumstances. As we have explained,

> [o]ne cannot admit knowledge of the presence of a mine field but claim ignorance because he was not aware that a mine was placed at the point he decided to enter it. Cases in which it is plain and palpable that knowledge was or should have been possessed by a person of ordinary intelligence and powers of observation will not be changed to a case involving disputed issues of material fact simply because the party claims he did not use his intelligence or powers of observation.

*First Pacific Mgmt. Corp. v. O'Brien*, 184 Ga. App. 277, 281 (361 SE2d 261) (1987); see also *Robinson*, 268 Ga. at 741 (1) ("The established standard is whether, taking everything into account the act is one which the common sense of mankind pronounces wants of such prudence as the ordinarily careful person would use in a like situation[.]") (citations and punctuation omitted); *Craig v. Lakeshore Marine, Inc.*, 228 Ga. App. 141, 142 (491 SE2d 197) (1997) (physical precedent only) ("The simple denial of knowledge that a particular danger existed within a generally known hazard, without more, does not create an issue of fact.").

On the record before us, we conclude that the trial court properly determined that Scott had equal knowledge of the risk and that he failed to exercise ordinary care. See *Bruce v. Ga.-Pacific, LLC*, 326 Ga. App. 595, 599 (2) (757 SE2d 192) (2014)

9

(plaintiff could not recover where he had equal knowledge of uneven tractor-trailer load); *Perkins*, 316 Ga. App. at 172 (1) (plaintiff had equal knowledge of tree overhanging sidewalk before twig pierced his eardrum); *Callaway Gardens Resort, Inc. v. Bierman*, 290 Ga. App. 111, 113 (658 SE2d 895) (2008) (plaintiff could not recover where evidence showed that she had equal knowledge of risk of falling off outdoor deck that lacked guardrail); *Saunders*, 285 Ga. App. at 419-420 (3) (plaintiff could not recover where he had equal knowledge of skylights and the possible danger and fell because he simply miscalculated his distance from the hazard). Compare *Johnson Street Properties v. Clure*, 302 Ga. 51, 56-57 (1) (a) (iii) (805 SE2d 60) (2017) (where plaintiff was aware of the danger of a falling tree limb but was injured by the tree limb as another person removed it, plaintiff did not assume the risk as a matter of law and factual questions remained about her knowledge of that danger).

The Scotts' reliance on *Gen. Manufactured Housing, Inc. v. Murray*, 233 Ga. App. 382 (504 SE2d 220) (1998), is misplaced. In that case, the plaintiff was installing sprinklers on a roof when the roof flexed and he lost his balance. Id. at 383. As he stepped backward, he placed his foot on a skylight and fell through it. Id. We concluded that the plaintiff did not assume the risk as a matter of law because he was not aware of the specific risk related to the condition that caused his injury. Id. at 384

(1). In contrast, here, Scott was aware of the precise risk that caused his fall – he knew when he stepped onto the roof that the skylights were there, that he could not see their exact locations, and that he risked falling through a skylight. Thus, he had equal knowledge of the risk of the very injury that occurred.

*Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 238 (III) (227 SE2d 336) (1976), also does not dictate a different conclusion. In that case, the plaintiff was spreading hot tar on the roof when he fell through a hole. Id. at 235 (I). Although he knew there could be holes on the roof, he was unaware of the specific hole through which he fell. Id. at 235 (I). The Supreme Court of Georgia concluded that summary judgment was not warranted, explaining that there remained factual issues because "looking continuously in all directions is not required in all circumstances. What is a 'reasonable lookout' depends on all the circumstances at the time and place." (Citation and punctuation omitted.) Id. Here, however, Scott *knew* there were skylights on the roof and, once he was up there, he *knew* he could no longer tell where they were located. Thus, the question was not whether he should have been looking in all directions continuously, but whether he failed to exercise ordinary care when he stepped onto the roof with the knowledge that he could no longer see the skylights.

11

Regardless of whether the Hospital was negligent in failing to place guards around the skylights when the Building was erected, Scott knew there were no guards when he ventured onto the roof. When he nevertheless walked onto the roof without any safety gear, despite this knowledge, he failed to exercise ordinary care for his own safety. Cf. *Beamon v. Georgia Power Co.*, 199 Ga. App. 309, 312 (404 SE2d 463) (1991) (electrical company worker assumed risk of injury despite factual question regarding whether power company was negligent in mounting transformer to pole).

Based on this record, we conclude that Scott had equal knowledge of the risk as a matter of law, and the trial court properly granted summary judgment to the Church and the Hospital.[4]

2. Scott's wife's loss of consortium claim is dependent on Scott's right to recover. *Sewell v. Dixie Region Sports Car Club of America, Inc.*, 215 Ga. App. 611, 612 (2) (451 SE2d 489) (1994). Having concluded that Scott had equal knowledge of the danger, he cannot recover, and, therefore, his wife's loss of consortium claim fails as well. Id.

---

[4] Given this conclusion, we need not address the question of whether Scott was an invitee or licensee. *Manners*, 347 Ga. App. at 741 (3); *Perkins*, 316 Ga. App. at 172 (1).

*Judgment affirmed. Doyle, P. J., and Coomer, J., concur.*